# Exhibit 45

# Medicare Program Integrity Manual
## Chapter 3 - Verifying Potential Errors and Taking Corrective Actions

**Table of Contents**
*(Rev. 10190, 06-19-20)*

## Transmittals for Chapter 3

3.1 - Introduction

3.2 - Overview of Prepayment and Postpayment Reviews

    3.2.1 - Setting Priorities and Targeting Reviews

    3.2.2 - Provider Notice

        3.2.2.1 - Maintaining Provider Information

    3.2.3 - Requesting Additional Documentation During Prepayment and Postpayment Review

        3.2.3.1 - Additional Documentation Requests (ADR)

        3.2.3.2 - Time Frames for Submission

        3.2.3.3 - Third-Party Additional Documentation Request

        3.2.3.4 - Additional Documentation Request Required and Optional Elements

        3.2.3.5 - Acceptable Submission Methods for Responses to ADRs

        3.2.3.6 - Reimbursing Providers and HIHs for Additional Documentation

        3.2.3.7 - Special Provisions for Lab Additional Documentation Requests

        3.2.3.8 - No Response or Insufficient Response to Additional Documentation Requests

        3.2.3.9 - Reopening Claims with Additional Information or Denied Due to Late or No Submission of Requested Information

        3.2.3.10 - Record Retention and Storage

    3.2.4 - Use of Claims History Information in Claim Payment Determinations

    3.2.5 - Targeted Probe and Educate (TPE)

3.3 - Policies and Guidelines Applied During Review

    3.3.1 - Types of Review: Medical Record Review, Non-Medical Record Review and Automated Review

        3.3.1.1 - Medical Record Review

        3.3.1.2 - Non-Medical Record Review

        3.3.1.3 – Automated Reviews

    3.3.2 - Medical Review Guidance

        3.3.2.1 - Documents on Which to Base a Determination

3.3.2.1.1 - Progress Notes and Templates

*3.3.2.1.2 –DMEPOS Orders*

3.3.2.2 - Absolute Words and Prerequisite Therapies

3.3.2.3 - Mandatory Policy Provisions

3.3.2.4 - Signature Requirements

3.3.2.5 – Amendments, Corrections and Delayed Entries in Medical Documentation

3.3.2.6 - Psychotherapy Notes

3.3.2.7 - Review Guidelines for Therapy Services

3.3.2.8 - MAC Articles

3.3.3 - Reviewing Claims in the Absence of Policies and Guidelines

3.4 - Prepayment Review of Claims

3.4.1 - Electronic and Paper Claims

3.4.1.1 - Linking LCD and NCD ID Numbers to Edits

3.4.1.2 - Not Otherwise Classified (NOC) Codes

3.4.1.3 - Diagnosis Code Requirements

3.4.1.4 - Prepayment Review of Claims Involving Utilization Parameters

3.4.1.5 - Prepayment Review Edits

3.4.2 - Prepayment Medical Record Review  Edits

3.5 - Postpayment Medical Record Review of Claims

3.5.1 - Re-opening Claims

3.5.2 - Case Selection

3.5.3 - CMS Mandated Edits

3.5.4 - Tracking Medicare Contractor's Prepayment and Postpayment Reviews

3.6 - Determinations Made During Review

3.6.1 - Determining Overpayments and Underpayments

3.6.2 - Verifying Errors

3.6.2.1 - Coverage Determinations

3.6.2.2 - Reasonable and Necessary Criteria

3.6.2.3 - Limitation of Liability Determinations

3.6.2.4 - Coding Determinations

3.6.2.5 - Denial Types

3.6.3 - Beneficiary Notification

3.6.4 - Notifying the Provider

3.6.5 - Provider Financial Rebuttal of Findings

3.6.6 - Review Determination Documentation Requirements

3.7 - Corrective Actions

3.7.1 - Progressive Corrective Action (PCA)

3.7.1.1 - Provider Error Rate

3.7.1.2 - Vignettes

3.7.1.3 - Provider Notification and Feedback

3.7.2 - Comparative Billing Reports (CBRs)

3.7.3 - Evaluating the Effectiveness of Corrective Actions

3.7.3.1 - Evaluation of Prepayment Edits

3.7.3.2 - Evaluating Effectiveness of Established Automated Edits

3.7.3.3 - Evaluation of Postpayment Review Effectiveness

3.7.4 - Tracking Appeals

3.7.5 - Corrective Action Reporting Requirements

3.8 - Administrative Relief from MR During a Disaster

3.9 - Defending Medical Review Decisions at Administrative Law Judge (ALJ) Hearings

3.9.1 – Election of Status

3.9.2 - **Coordination of** the ALJ Hearing

3.10 – Prior Authorization

3.10.1 -  Prior Authorization Program for Certain DMEPOS

3.10.2 - Prior Authorization Process for Certain Hospital Outpatient Department (OPD) Services

3

## 3.1 – Introduction
**(Rev. 377, Issued: 05-27-11, Effective: 06-28-11, Implementation: 06-28-11)**

All references to Medicare Administrative Contractors (MACs) include Affiliated Contractors (ACs).  Affiliated Contractors are FI's and Carriers.

All references to Zone Program Integrity contractors (ZPICs) include Program Safeguard Contractors (PSCs).

**A. Goals**
This section applies to Medicare Administrative Contractors (MACs), Comprehensive Error Rate Testing (CERT), and Recovery Auditors, as indicated.

The Medicare Administrative Contractors (MACs) shall analyze claims to determine provider compliance with Medicare coverage, coding, and billing rules and take appropriate corrective action when providers are found to be non-compliant.  The goal of MAC administrative actions is to correct the behavior in need of change and prevent future inappropriate billing.  The priority for MACs is to minimize potential future losses to the Medicare Trust Funds through targeted claims review while using resources efficiently and treating providers and beneficiaries fairly.

For repeated infractions, MACs have the discretion to initiate progressively more severe administrative action, commensurate with the seriousness of the identified problem. (Refer to PIM chapter 3, §3.7.1).  MACs shall deal with serious problems using the most substantial administrative actions available, such as 100 percent prepayment review of claims. Minor or isolated inappropriate billing shall be remediated through provider notification or feedback with reevaluation after notification.  When medical review (MR) notification and feedback letters are issued, the MAC MR staff shall ensure that Provider Outreach and Education (POE) staff has access to copies of the letters in case a provider requests further education or POE determines that future education is needed.  While program savings are realized through denials of payment for inappropriate provider billing, the optimal result occurs when compliance is achieved and providers no longer incorrectly code or bill for non-covered services.

The Medicare Fee For Service Recovery Audit program is a legislatively mandated program (Tax Relief and Health Care Act of 2006) that utilizes Recovery Auditors to identify improper payments paid by Medicare to fee-for-service providers.  The Recovery Auditors identify the improper payments, and the MACs adjust the claims, recoup identified overpayments and return underpayments.

MAC, CERT and Recovery Auditor staff shall not expend Medicare Integrity Program (MIP)/ MR resources analyzing provider compliance with Medicare rules that do not affect Medicare payment. Examples of such rules include violations of conditions of participation (COPs), or coverage or coding errors that do not change the Medicare payment amount.

The COPs define specific quality standards that providers shall meet to participate in the Medicare program.  A provider's compliance with the COPs is determined by the CMS Regional Office (RO) based on the State survey agency recommendation.  If during a review, any contractor believes that a provider does not comply with conditions of participation, the reviewer shall not deny payment solely for this reason.  Instead, the contractor shall notify the RO and the applicable State survey agency.

When a potential underpayment or overpayment is identified, certain steps are normally followed to determine if a payment error exists.  These steps are referred to as the claims development process.  The reviewer generally does the following:

- Investigates the claims and associated documentation;
- Performs appropriate research regarding liability, benefit categories, statutory requirements, etc.;
- Determines if a payment error exists and the nature of the error;
- Notifies the beneficiary and provider/supplier; and
- Starts the payment reconciliation process.

**B.  New Provider/New Benefit Monitoring**

This section applies to the MACs.

The MACs shall analyze data to identify patterns of billing aberrancies of providers new to the Medicare program. The MACs have the option of performing prepayment or postpayment review of claims submitted by new providers as needed.  The CMS encourages the MACs to perform these reviews on a prepayment basis to have the greatest chance of identifying and reducing the error rate of new providers. When MACs review the claims of a new provider, the MACs shall perform a limited review of generally 20-40 claims in order to evaluate accurate billing.

The MACs shall also monitor for provider use of new statutory benefits and to ensure correct coverage, coding, and billing from the beginning. New benefit edits shall continue until the MAC is satisfied that the new benefits are being used and billed appropriately or until the MAC determines that resources would best be spent on other types of review.

## 3.2 – Overview of Prepayment and Postpayment Reviews
**(Rev. 876; Issued: 04-12-19; Effective: 05-13-19; Implementation: 05-13-19)**

The term Medicare beneficiary identifier (Mbi) is a general term describing a beneficiary's Medicare identification number. For purposes of this manual, Medicare beneficiary identifier references both the Health Insurance Claim Number (HICN) and the Medicare Beneficiary Identifier (MBI) during the new Medicare card transition period and after for certain business areas that will continue to use the HICN as part of their processes.

This section applies to MACs, CERT, RACs, SMRCs, and ZPICs/Unified Program Integrity Contractors (UPICs), as indicated.

**A. Prepayment and Postpayment Review**

Prepayment review occurs when a reviewer makes a claim determination before claim payment has been made.  Prepayment review always results in an "initial determination"

Postpayment review occurs when a reviewer makes a claim determination after the claim has been paid.  Postpayment review results in either no change to the initial determination or a "revised determination" indicating that an overpayment or underpayment has occurred.

**B. Prepayment Edit Capabilities**

Prepayment edits shall be able to key on a beneficiary's Medicare beneficiary identifier (Mbi), National Provider Identifier (NPI) and specialty code, service dates, and diagnosis or procedure code(s) (i.e., Healthcare Common Procedure Coding System [HCPCS] and/or International Classification of Diseases diagnoses codes), Type of Bill (TOB), revenue codes, occurrence codes, condition codes, and value codes.

The MAC systems shall be able to select claims for prepayment review using different types of comparisons.  At a minimum, those comparisons shall include:

- Procedure to Procedure -permits contractor systems to screen multiple services at the claim level and in history.

- Procedure to Provider - permits selective screening of services that need review for a given provider.

- Frequency to Time- permits contractors to screen for a certain number of services provided within a given time period.

- Diagnosis to Procedure- permits contractors to screen for services submitted with a specific diagnosis.  For example, the need for a vitamin B12 injection is related to pernicious anemia, absent of the stomach, or distal ileum.  Contractors must be able to establish edits where specific diagnosis/procedure relationships are considered in order to qualify the claim for payment.

- Procedure to Specialty Code or TOB- permits contractors to screen services provided by a certain specialty or TOB.

- Procedure to Place of Service- permits selective screening of claims where the service was provided in a certain setting such as a comprehensive outpatient rehabilitation facility.

Additional MAC system comparisons shall include, but are not limited to the following:

- Diagnoses alone or in combination with related factors.

- Revenue linked to the health care common procedure coding system (HCPCS).

- Charges related to utilization, especially when the service or procedure has an established dollar or number limit.

- Length of stay or number of visits, especially when the service or procedure violates time or number limits.

- Specific providers alone or in combination with other parameters.

The MR edits are coded system logic that either automatically pays all or part of a claim, automatically denies all or part of a claim, or suspends all or part of a claim so that a trained clinician or claims analyst can review the claim and associated documentation (including documentation requested after the claim is submitted) in order to make determinations about coverage and payment under Section 1862(a) (1) (A) of the Act. Namely, the claim is for a service or device that is medically reasonable and necessary to diagnose or treat an injury or improve the functioning of a malformed body member.  All non-automated review work resulting from MR edits shall:

- Involve activities defined under the MIP at §1893(b)(1) of the Act;

- Be articulated in the MAC's medical review strategy;

- Be designed in such a way as to reduce the MAC's CERT error rate or prevent the MAC's CERT error rate from increasing, or;

Prevent improper payments identified by the RACs.

### 3.2.1 – Setting Priorities and Targeting Reviews
**(Rev. 399, Issued: 11-04-11, Effective: 12-05-11, Implementation: 12-05-11)**

This section applies to MACs and Recovery Auditors, as indicated. Recovery Auditors perform targeted reviews consistent with their statements of work (SOWs).

The MACs have the authority to review any claim at any time, however, the claims volume of the Medicare Program doesn't allow for review of every claim. The MACs shall target their efforts at error prevention to those services and items that pose the greatest financial risk to the Medicare program and that represent the best investment of resources. This requires establishing a priority setting process to assure MR focuses on areas with the greatest potential for improper payment.

### 3.5.2 - Case Selection
**(Rev. 721; Issued: 06-09-17; Effective: 07-11-17; Implementation: 07-11-17)**

This section applies to MACs, CERT, SMRC, and ZPICs/UPICs, as indicated.

**Case review and development provisions:**

The MACs and the SMRC shall not perform postpayment review of unassigned claims. A claim submitted for a service or supply by a provider who has not accepted the Medicare fee schedule is an unassigned claim.

- The MACs, SMRC, and ZPICs/UPICs have the discretion to select cases for postpayment review on a claim-by-claim basis or use statistical sampling for overpayment estimation.

    o When MACs, SMRC, and ZPICs/UPICs conduct claim-by-claim postpayment review, they shall only collect or refund the actual overpayment or underpayment amount.

    o When MACs, SMRC, and ZPICs/UPICs conduct statistical sampling for overpayment estimation as specified in PIM chapter 8, they shall extrapolate the sampling results to the known universe of similar claims when calculating the projected overpayment or underpayment amount.

- The MACs, RACs, SMRC, and ZPICs/UPICs have the discretion to conduct the postpayment review onsite at the provider or supplier's location.

- MAC staff shall review their provider tracking system, using RAC Data Warehouse (RACDW) data, and consult with the ZPICs/UPICs to ensure non-duplication during the process of selecting providers for postpayment review.

- To prevent duplicate claim reviews, the MACs, SMRC, and RACs shall use the RACDW to identify, and exclude from review, claims that were previously reviewed, or that are under current review, by another contractor.

- CERT shall duplicate another contractor's review, when appropriate, if those claims are chosen as part of a statistically valid random sample to measure the improper payment rate.

- This instruction does not prevent the ZPICs/UPIC from reviewing a claim that has been reviewed by another contractor in order to support their case development or other administrative action.

- When the MACs, CERT, RACs, SMRC and ZPICs/UPICs choose to send the provider an ADR for a postpayment review, they shall do so in accordance with

PIM chapter 3, §3.2.3.2. The contractors may grant an extension of the submission timeframes at their discretion or in accordance with their SOWs.

- The MACs, CERT, RACs, SMRC and ZPICs/UPICs make coverage, coding, and/or other determinations when re-adjudicating claims.

- The MACs, CERT, RACs, SMRC and ZPICs/UPICs shall document all incorrectly paid, denied, or under-coded (e.g., billed using a procedure/supply or other code that is lower than what is supported by medical documentation) items or services.

- Services newly denied as a result of re-adjudication shall be reported as positive values.

- Services that were denied, but are reinstated as a result of re-adjudication shall be reported as negative values.

- The MACs, CERT, RACs, SMRC and ZPICs/UPICs shall document the rationale for denial and include the basis for revisions in each case (important for provider appeals). MACs, CERT, and ZPICs/UPICs should include copies of the NCD, coverage provisions from interpretive manuals, or LCD and any applicable references needed to support individual case determinations. RACs and the SMRC shall include detailed rationale as outlined in their SOWs.

- The MACs have the discretion to deny payment without the review of the claim with a medically unlikely service edit.

## 3.5.3 - CMS Mandated Edits
**(Rev. 721; Issued: 06-09-17; Effective: 07-11-17; Implementation: 07-11-17)**

In past years, CMS created mandated edits that suspend certain claims for medical review coverage and coding review. However, more recently, CMS has given the contractors the discretion to prioritize workload to effectively lower the error rate. CMS is now in the process of removing such mandated coverage and coding review edits from CWF, pricer, grouper, fee schedules, etc.

Contractors may override CMS mandated edits that suspend for medical review coverage and coding review without performing review if one or more of the following conditions apply:

1. The contractor does not have MR responsibility for the claim, or

2. The contractor's data analysis/priority setting/ MR strategy does not indicate this service is a problem in their jurisdiction, or

3.  It is not a skilled nursing facility (excluding swing beds) or a home health demand bill (these demand bills must be reviewed).

## 3.5.4 - Tracking Medicare Contractors' Prepayment and Postpayment Reviews
**(Rev.755; Issued: 11-09-17; Effective: 12-11-17; Implementation: 12-11-17)**

Medicare Administrative Contractors (MACs) shall input all prepayment and postpayment complex reviews into the Recovery Audit Data Warehouse.  All claims chosen for review by the MAC where an additional documentation request letter was issued to the provider before or after payment was made shall be included.  MACs shall include all reviews, even those that did not result in an improper payment.

Claims may be manually uploaded into the data warehouse or submitted by flat file. The MACs shall use the file layout provided by CMS for claims uploaded to the Recovery Audit Data Warehouse. Postpayment claims shall be submitted to the Recovery Audit Data Warehouse by the 20th day of every month for the previous month. Prepayment claims shall be submitted to the Recovery Audit Data Warehouse by the 15th day of every month for the previous month.

MAC staff who need access to the Data Warehouse shall contact RAC@cms.hhs.gov.

## 3.6 - Determinations Made During Review
**(Rev. 377, Issued: 05-27-11, Effective: 06-28-11, Implementation: 06-28-11)**

This section applies to MACs, CERT, Recovery Auditors, and ZPICs, as indicated.

**A.  General**

The MACs, CERT, Recovery Auditors, and ZPICs shall be able to differentiate the type of determination made, ensuring that limitation of liability determinations are appropriate.

When the MAC determines, through prepayment data analysis or postpayment review, that an inappropriate claim has been submitted; or the Recovery Auditor determines, in post-payment review, that an improper payment has been made, the MAC and Recovery Auditor shall verify that the error represents an unacceptable practice and not just an explainable aberrancy. Some legitimate reasons for anomalous data include:

- The provider may be associated with a medical school, research center, or may be a highly specialized facility, for instance, the facility may be a Medicare-dependant hospital or CAH, which might skew the type of claims submitted; or

- The community in which the provider practices may have special characteristics such as socio-economic level or a concentration of a specific age group that leads to an apparent aberrancy in the use of certain services.

The MACs, CERT, Recovery Auditors, and ZPICs have the discretion to make other determinations during the review of a claim to avoid or identify improper payments for such things as duplicate claims, etc. Other examples are listed below:

> **Example 1:** A Medicare policy states that when three (3) procedures are performed during the same operative session, Medicare pays 100 percent for the first, 50 percent for the second and 25 percent for the third.  A claim is identified where all three (3) procedures were paid at 100 percent.

> **Example 2:** A claim was paid using the fee schedule from the prior year.

> **Example 3:** A Medicare payment policy states that in order to pay for a capped rental item, consideration shall be given to whether the item was in "continuous use" by the beneficiary for a specified time period.  A claim is found to have been paid out of compliance with this policy provision.

If, at any time, the medical review detects potential fraud, MACs, CERT, and Recovery Auditors, shall refer the issue to the appropriate ZPIC.

## 3.6.1 - Determining Overpayments and Underpayments
**(Rev. 377, Issued: 05-27-11, Effective: 06-28-11, Implementation: 06-28-11)**

This section applies to MACs, and ZPICs.  It does not apply to CERT or Recovery Auditors.

**A.  General**

The results of the re-adjudication are used to determine the overpayment or underpayment amount for each claim.  Re-adjudicating claims may not result in a payment correction. Where statistical sampling for overpayment estimation is used, refer to instructions in the PIM chapter 8, §8.4 and to Exhibits 9, 10, 11 and 12 for projection methodologies based on FFS claims. For claims paid under PPS rules, MACs and ZPICs shall develop projection methodologies in conjunction with their statisticians that are consistent with the requirements found in PIM chapter 8, §8.4. MACs and ZPICs shall net out the dollar amount of services underpaid during the cost accounting period, meaning that amounts owed to providers are balanced against amounts owed from providers.

Amounts of the following overpayments are to be included in each provider's or supplier's estimate for the reviewed sample:

- According to the provisions of §1879 of the Act, the provider or supplier is liable for the overpayment of initially paid claims that were later denied on re-adjudication if :

11

(1)    The basis for denial is by reason of §1862(a) (l) or (9) of the Act

(2    The provider or supplier knew or could reasonably have been expected to know that the items or services were excluded from coverage, and

- For denials of non-assigned claims make a§1842(l) determination on denials for §1862(a)(1)

- The provider or supplier was not without fault for the overpayment as defined in §1870 of the Act.

For appeal purposes, overpayment estimations applicable under §1879 of the Act will be identified separately from denials in which §1879 of the Act does not apply. Where both types of denials occur in the sample, MACs and ZPICs calculate and document separate under/overpayments for each type of denial. For recovery purposes, however, both denial results are combined.

## 3.6.2 - Verifying Errors
**(Rev. 377, Issued: 05-27-11, Effective: 06-28-11, Implementation: 06-28-11)**

This section applies to MACs, CERT, and ZPICs, as indicated.

Understanding the characteristics of the service area of the provider is a key element of claim data analysis. The areas selected for review by the contractor (e.g., providers, services) must be deemed high priority and contractors must be able to document the rationale for selection.

## 3.6.2.1 - Coverage Determinations
**(Rev. 377, Issued: 05-27-11, Effective: 06-28-11, Implementation: 06-28-11)**

The MACs, CERT, Recovery Auditors, and ZPICs shall deny an item or service if it does not meet any of the conditions listed below:

- The item or service does not fall into a Medicare benefit category.

- The item or service is statutorily excluded on grounds other than §1862(a) (1) (A) of the Act.

- The item or service is not reasonable and necessary under §1862(a) (1) (A) of the Act.

- The item or service does not meet other Medicare program requirements for payment.

## 3.6.2.2 - Reasonable and Necessary Criteria
**(Rev. 377, Issued: 05-27-11, Effective: 06-28-11, Implementation: 06-28-11)**