# Exhibit 46



# COVID-19 Frequently Asked Questions (FAQs) on Medicare Fee-for-Service (FFS) Billing

**Public Health Emergency (PHE) 1135 Waivers: Updated Guidance for Providers**

On February 9, 2023, the Department of Health and Human Services (HHS) announced its intent to end the Public Health Emergency (PHE) for COVID-19 on May, 11, 2023. COVID-19 remains a significant priority for the Biden-Harris Administration and the Centers for Medicare & Medicaid Services (CMS) will work to ensure a smooth transition.  During the PHE, CMS has used a combination of emergency authority waivers, regulations, enforcement discretion, and sub-regulatory guidance to ensure and expand access to care and to give health care providers the flexibilities needed to help keep people safe.

Some of the flexibilities that were created during the pandemic were recently expanded by the Consolidated Appropriations Act, 2023.  Others, while critical to our response to COVID-19, are no longer needed. CMS has made further updates to our CMS Emergencies Page with useful information for providers – specifically around major telehealth and individual waivers – that were initiated during the PHE.

Please reference the following guidance in response to HHS's intent to end the PHE on May 11, 2023:
Provider-specific fact sheets about COVID-19 PHE waivers and flexibilities:
https://www.cms.gov/coronavirus-waivers

---

The FAQs in this document will sunset at the end of the COVID PHE and will not be updated. For future emergency and disasters; providers and suppliers should refer to the Medicare FFS PHE FAQs located at:
- With 1135 Waiver FAQs - https://www.cms.gov/About-CMS/Agency-Information/Emergency/Downloads/MedicareFFS-EmergencyQsAs1135Waiver.pdf
- Without 1135 Waiver FAQs - https://www.cms.gov/About-CMS/Agency-Information/Emergency/Downloads/Consolidated_Medicare_FFS_Emergency_QsAs.pdf

We note that in many instances, the general statements of the FFS PHE FAQs referenced above have been superseded by COVID-19-specific legislation, emergency rules, and waivers granted under section 1135 of the Act specifically to address the COVID-19 PHE. The policies set out in this FAQ document are effective for the duration of the PHE unless superseded by previous direction or future legislation.

1



- For more information regarding use of Veklury (remdesivir), see [FDA press release](#) and the [new FDA package insert](#) linked.

   Updated: 2/16/22

**31. Question:** Who can administer the COVID-19 vaccine to Medicare beneficiaries?
**Answer:** Individuals who are authorized under applicable state scope of practice and licensure requirements may administer vaccines to Medicare beneficiaries. The list of health care provider types eligible to enroll and bill Medicare for the COVID-19 vaccination is available in the provider toolkit located here: https://www.cms.gov/medicare/covid-19/enrollment-administering-covid-19-vaccine-shots.
Updated: 3/5/21

## CC. National Coverage Determinations (NCD)

**1. Question:** Are all LCD/NCD medical necessity DME criteria waived under CMS-1744-IFC, Section U? Specifically, are the requirements for in person pre-service interactions waived for DME?
**Answer:** No. While CMS-1744-IFC waived certain coverage criteria and/or in-person encounter requirements (for items other than power mobility devices), the medical record must be sufficient to support payment for the services billed (that is, the services were actually provided, were provided at the level billed, and were medically necessary). We remind physicians, practitioners, and suppliers that, unless there is a specific exception, services and equipment furnished to patients must be reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member.
CMS-1744-IFC finalized that to the extent an NCD or LCD (including articles) would otherwise require a face-to-face or in-person encounter for other implied face-to-face services, those requirements would not apply during the public health emergency (PHE) for the COVID-19 pandemic. However, some face-to-face encounter requirements for DMEPOS Power Mobility Devices (PMDs) are mandated by statute for program integrity purposes. The IFC does not apply to those statutory requirements.
New: 4/23/20

**2. Question:** Regarding face-to-face requirements, some drugs require the first few doses to be administered by a healthcare professional before DME coverage begins. Would the infusion nurse/supplier be able to provide first doses at a beneficiary's home as long as the physician is there virtually?
**Answer:** Physicians (including those practicing in free-standing infusion centers) can furnish physicians' services, including medically necessary injected or infused drugs, in the patient's home. Through flexibility adopted in the March 31st interim final rule, physicians can also furnish services in the patient's home as an incident to their professional services with their



**Answer:** Yes, to the extent NCDs and LCDs require a specific practitioner type or physician specialty to furnish a service, procedure or any portion thereof, we have provided flexibility that on an interim basis that the chief medical officer or equivalent of the facility can authorize another physician specialty or other practitioner type to meet those requirements during the PHE for the COVID-19 pandemic. See 85 Fed. Reg. at 19267 (April 6, 2020). New: 9/11/20

21. **Question:** Can providers now prescribe a therapeutic continuous glucose monitor to *all* beneficiaries with diabetes [Type I *and* Type II] for the duration of the COVID-19 PHE, irrespective of their level of insulin dependence and the parameters of the existing local coverage determinations (LCDs), so long as documentation supports its being medically appropriate?
**Answer:** Yes, our May 8, 2020 interim final rule with comment finalized on an interim basis that we will not enforce the clinical indications for therapeutic continuous glucose monitors in LCDs (85 FR 27595) during the COVID-19 PHE. We will not enforce the current clinical indications restricting the type of diabetes that a beneficiary must have or relating to the demonstrated need for frequent blood glucose testing. This enforcement discretion will only apply during the public health emergency for the COVID-19 pandemic. We remind physicians, practitioners and DME suppliers that services and equipment furnished to patients must be reasonable and necessary. Accordingly, the medical record should be sufficient to support payment for the services billed (that is, the services were actually provided, were provided at the level billed, and were medically necessary). New: 9/11/20

22. **Question:** Because CMS is not enforcing clinical indications for certain NCDs and LCDs during the COVID-19 PHE, how will practitioners, providers and suppliers know what indications will be covered and what is required for documentation?
**Answer:** Standard written orders (SWO) and medical record documentation will be critical in demonstrating to MACs that the service furnished was reasonable and necessary. This is the same process that is used when there is an absence of NCDs or LCDs for an item or service. We remind physicians, practitioners and suppliers that services and equipment furnished to patients must be reasonable and necessary. Accordingly, the medical record should be sufficient to support payment for the services billed (that is, the services were actually provided, were provided at the level billed, and were medically necessary). This flexibility applies only to clinical indications and not to other policy aspects, such as benefit category determinations, of NCDs and LCDs. New: 9/11/20

23. **Question:** During the PHE, face-to-face and in-person encounters that are required or inferred as part of NCDs and LCDs will not apply. How do practitioners, providers and suppliers interpret this flexibility when it comes to NCDs and LCDs that have coverage