**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| *In re AdaptHealth Corp. Securities Litigation* | Case No. 2:23-cv-04104-MRP<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

November 15, 2024

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

TABLE OF ABBREVIATIONS ............................................................................................. viii

PRELIMINARY STATEMENT .................................................................................................1

ARGUMENT ..............................................................................................................................2

I.     THE AMENDED COMPLAINT FAILS TO STATE A SECTION 10(b) CLAIM. ......... 2

     A.     Loss Causation Is Not Adequately Pled...................................................................... 2

     B.     Scienter Is Not Adequately Pled. ............................................................................... 6

          1.     The Motion Properly Analyzed The Scienter Allegations........................... 6

          2.     No Strong Inference Of Scienter From The Few Allegations Regarding The Executive Defendants And/Or The E.A. Officer Defendants.............. 7

          3.     No Strong Inference Of Scienter From "Circumstantial" Allegations. .... 11

          4.     No Extraordinary Circumstances To Establish Corporate Scienter.......... 13

     C.     A Material Misrepresentation Is Not Adequately Pled........................................ 14

          1.     E.A. Revenue Statements............................................................................ 14

          2.     E.A. Compliance Statements ..................................................................... 15

          3.     Other E.A. Challenged Statements ............................................................ 17

          4.     All Defendants Are Not "Makers" Of E.A. Challenged Statements. ....... 19

     D.     Defendants Have Moved To Dismiss The Entire Section 10(b) Claim................ 19

II.     THE AMENDED COMPLAINT FAILS TO STATE A SECTION 20(a) CLAIM. ....... 20

III.     THE AMENDED COMPLAINT FAILS TO STATE A SECTION 11 CLAIM............. 22

     A.     Tracing And Thus Standing Is Not Adequately Pled............................................ 22

     B.     A Material Misrepresentation Or Omission Is Not Adequately Pled. .................. 25

IV.     THE AMENDED COMPLAINT FAILS TO STATE A SECTION 15 CLAIM............. 26

CONCLUSION.........................................................................................................................27

# TABLE OF AUTHORITIES

**Cases**                                                                                   **Page(s)**

*In re Advance Auto Parts, Inc., Sec. Litig.*,
  No. 18-cv-212 (RGA), 2020 WL 599543 (D. Del. Feb. 7, 2020)................................20, 21, 22

*In re Aetna, Inc. Sec. Litig.*,
  617 F.3d 272 (3d Cir. 2010)...........................................................................................16

*Aldridge v. A.T. Cross Corp.*,
  284 F.3d 72 (1st Cir. 2002).............................................................................................2

*In re Amarin Corp. PLC Sec. Litig.*,
  No. 3:19-cv-06601 (BRM), 2021 WL 1171669 (D.N.J. Mar. 29, 2021)..................................7

*In re Anadigics, Inc., Sec. Litig.*,
  No. 08-cv-5572 (MLC), 2011 WL 4594845 (D.N.J. Sept. 30, 2011),
  *aff'd*, 484 F. App'x 742 (3d Cir. 2012).......................................................................6

*In re Ariad Pharms., Inc. Sec. Litig.*,
  842 F.3d 744 (1st Cir. 2016)..........................................................................................24

*In re Ascena Retail Grp., Inc. Sec. Litig.*,
  No. 19-cv-13529 (KM), 2022 WL 2314890 (D.N.J. June 28, 2022)........................................9

*In re Aurora Cannabis Inc. Sec. Litig.*,
  No. 19-cv-20588, 2023 WL 5508831 (D.N.J. Aug. 24, 2023) ...................................................4

*Baker v. MBNA Corp.*,
  No. 05-cv-272 (GMS), 2007 WL 2009673 (D. Del. July 6, 2007)........................................9

*Cal. Pub. Emps. Ret. Sys. v. Chubb Corp.*,
  394 F.3d 126 (3d Cir. 2004)...........................................................................................26

*Carmack v. Amaya Inc.*,
  258 F. Supp. 3d 454 (D.N.J. 2017) ...............................................................................27

*In re Century Aluminum Co. Sec. Litig.*,
  729 F.3d 1104 (9th Cir. 2013) ...............................................................................23, 24, 25

*In re Century Aluminum Co. Sec. Litig.*,
  749 F. Supp. 2d 964 (N.D. Cal. 2010) ............................................................................23

*In re CenturyLink Sales Pracs. & Sec. Litig.*,
  403 F. Supp. 3d 712 (D. Minn. 2019).........................................................................10, 12

*City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*,
  442 F. App'x 672 (3d Cir. 2011) ...............................................................................13–14

*City of Sunrise Gen. Emps.' Ret. Plan v. FleetCor Techs., Inc.*,
No. 1:17-cv-2207 (LMM), 2018 WL 4293143 (N.D. Ga. May 15, 2018) ..............................15

*City of Warwick Ret. Sys. v. Catalent, Inc.*,
No. 23-cv-1108 (ZNQ), 2024 WL 3219616 (D.N.J. June 28, 2024)........................................8

*In re Cognizant Tech. Sols. Corp. Sec. Litig.*,
No. 2:16-cv-06509 (WHW), 2018 WL 3772675 (D.N.J. Aug. 8, 2018)................................19

*De Vito v. Liquid Holdings Grp., Inc.*,
No. 15-cv-6969 (KM), 2018 WL 6891832 (D.N.J. Dec. 31, 2018) ...........................23, 24, 25

*In re Digit. Island Sec. Litig.*,
223 F. Supp. 2d 546 (D. Del. 2002)
*aff'd*, 357 F.3d 322.................................................................................................20, 21, 22

*In re Discovery Labs. Sec. Litig.*,
No. 06-cv-1820 (SRD), 2007 WL 789432 (E.D. Pa. Mar. 15, 2007).....................................18

*In re Dr. Reddy's Lab'y Ltd. Sec. Litig.*,
No. 3:17-cv-6436 (PGS), 2019 WL 1299673 (D.N.J. Mar. 21, 2019) ...................................12

*Duncan v. Vantage Corp.*,
No. 18-cv-288 (MN), 2019 WL 1349497 (D. Del. Mar. 26, 2019)........................................27

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)................................................................................................................6

*In re Eros Int'l PLC Sec. Litig.*,
No. 19-14125 (JMV), 2021 WL 1560728 (D.N.J. Apr. 20, 2021) ...........................................3

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
308 F. Supp. 2d 249 (S.D.N.Y. 2004)....................................................................................22

*In re FleetBoston Fin. Corp. Sec. Litig.*,
253 F.R.D. 315 (D.N.J. 2008)................................................................................................24

*In re Franklin Bank Corp. Sec. Litig.*,
782 F. Supp. 2d 364 (S.D. Tex. 2011) ...................................................................................22

*Gorlamari v. Verrica Pharms., Inc.*,
No. 22-cv-2226, 2024 WL 150341 (E.D. Pa. Jan. 11, 2024)..................................................21

*In re Grab Holdings Ltd. Sec. Litig.*,
No. 1:22-cv-02189 (JLR), 2024 WL 1076277 (S.D.N.Y. Mar. 12, 2024) .............................16

*GSC Partners CDO Fund v. Washington*,
368 F.3d 228 (3d Cir. 2004).....................................................................................................7

*Hall v. Johnson & Johnson*,
   No. 18-cv-1833 (FLW), 2019 WL 7207491 (D.N.J. Dec. 27, 2019) ........................................3

*Harriman v. E. I. DuPont De Nemours & Co.*,
   372 F. Supp. 101 (D. Del. 1974)...........................................................................................22

*Hemmer Grp. v. Sw. Water Co.*,
   663 F. App'x 496 (9th Cir. 2016) ..........................................................................................25

*In re Hertz Glob. Holdings Inc.*,
   905 F.3d 106 (3d Cir. 2018).............................................................................................6, 10

*Howard v. Arconic Inc.*,
   No. 2:17-cv-1057 (MRH), 2021 WL 2561895 (W.D. Pa. June 23, 2021) ........................26, 27

*Howard v. Arconic Inc.*,
   395 F. Supp. 3d 516 (W.D. Pa. 2019)................................................................................16, 17

*Hull v. Glob. Digit. Sols., Inc.*,
   No. 16-cv-5153 (FLW), 2017 WL 6493148 (D.N.J. Dec. 19, 2017) ........................................3

*Institutional Invs. Grp. v. Avaya, Inc.*,
   564 F.3d 242 (3d Cir. 2009)....................................................................................................10

*In re Intelligroup Sec. Litig.*,
   468 F. Supp. 2d 670 (D.N.J. 2006) ...........................................................................................5

*In re Intelligroup Sec. Litig.*,
   527 F. Supp. 2d 262 (D.N.J. 2007) ...........................................................................................9

*In re ITT Educ. Servs., Inc. Sec. & S'holder Derivatives Litig.*,
   859 F. Supp. 2d 572 (S.D.N.Y. 2012)......................................................................................16

*Janus Capital Grp., Inc. v. First Derivative Traders*,
   564 U.S. 135 (2011)..................................................................................................................19

*Jaroslawicz v. M&T Bank Corp.*,
   962 F.3d 701 (3d Cir. 2020).....................................................................................................26

*Jedrzejczyk v. Skillz Inc.*,
   No. 21-cv-03450 (RS), 2022 WL 2441563 (N.D. Cal. July 5, 2022)......................................25

*Laasko v. Endo Int'l, PLC*,
   No. 20-cv-07536 (EP), 2022 WL 3444038 (D.N.J. Aug. 17, 2022).................................10–11

*LLDVF, L.P. v. Dinicola*,
   No. 09-cv-1280 (JLL), 2010 WL 3210613 (D.N.J. Aug. 12, 2010)..................................21, 22

*Lowry v. RTI Surgical Holdings, Inc.*,
  532 F. Supp. 3d 652 (N.D. Ill. 2021) ...................................................................9, 12

*Luna v. Marvell Tech. Grp.*,
  No. 15-cv-05447 (WHA), 2017 WL 2171273 (N.D. Cal. May 17, 2017) ...............................9

*Martin v. GNC Holdings, Inc.*,
  757 F. App'x 151 (3d Cir. 2018) .......................................................................12

*In re Merck & Co., Sec., Derivative & Erisa Litig.*,
  MDL No. 1658 (SRC), 2012 WL 3779309 (D.N.J. Aug. 29, 2012) .....................................21

*In re MobileMedia Sec. Litig.*,
  28 F. Supp. 2d 901 (D.N.J. 998) .......................................................................26

*Nat'l Junior Baseball League v. Pharmanet Dev. Grp., Inc.*,
  720 F. Supp. 2d 517 (D.N.J. 2010) ...................................................................4–5

*In re Ocugen, Inc. Sec. Litig.*,
  659 F. Supp. 3d 572 (E.D. Pa. 2023),
  *aff'd*, No. 23-cv-1570, 2024 WL 1209513 (3d Cir. Mar. 21, 2024) .................................19, 23

*Oklahoma Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*,
  58 F.4th 195 (5th Cir. 2023) ...........................................................................8

*Paxton v. Provention Bio, Inc.*,
  No. 3:21-cv-11613, 2022 WL 3098236 (D.N.J. Aug. 4, 2022)................................................3

*Phoenix Ins. Co. v. ATI Physical Therapy, Inc.*,
  690 F. Supp. 3d 862 (N.D. Ill. 2023) .................................................................8

*Rabin v. NASDAQ OMX PHLX LLC*,
  712 F. App'x 188 (3d Cir. 2017) (unpublished) .......................................................19

*S.E. Penn. Transp. Auth. v. Orrstown Fin. Servs., Inc.*,
  No. 1:12–cv–00993, 2015 WL 3833849 (M.D. Pa. June 22, 2015) .......................................16

*San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*,
  No. 22-cv-6339 (AS), 2024 WL 1898512 (S.D.N.Y. May 1, 2024) ......................................12

*In re Sanofi Sec. Litig.*,
  155 F. Supp. 3d 386 (S.D.N.Y. 2016).....................................................................14

*Schwab Cap. Tr. v. Celgene Corp.*,
  No. 20-cv-3754 (JMV), 2021 WL 1085474 (D.N.J. Mar. 22, 2021).....................................16

*Slack Techs., LLC v. Pirani*,
  598 U.S. 759 (2023)......................................................................................23

*Steamfitters Loc. 499 Pension Fund v. Alter*,
No. 09–4730, 2011 WL 4528385 (E.D. Pa. Sept. 30, 2011) ....................................................20

*Sterling v. Iris Energy Ltd.*,
No. 22-07273, 2024 WL 4318762 (D.N.J. Sept. 27, 2024).....................................................27

*Takata v. Riot Blockchain, Inc.*,
No. 18-2293 (GC), 2023 WL 7133219 (D.N.J. Aug. 25, 2023).................................................19

*In re Telefonaktiebolaget LM Ericsson Sec. Litig.*,
675 F. Supp. 3d 273 (E.D.N.Y. 2023),
*aff'd sub nom. Boston Ret. Sys. v. Telefonaktiebolaget LM Ericsson*,
2024 WL 4023842 (2d Cir. Sept. 3, 2024) .............................................................................17

*In re Tellium, Inc. Sec. Litig.*,
No. 02-cv-5878 (FLW), 2005 WL 2090254 (D.N.J. Aug. 26, 2005)...................................4, 5

*Universal Am. Corp. v. Partners Healthcare Sols. Holdings, L.P.*,
176 F. Supp. 3d 387 (D. Del. 2016).......................................................................................21

*In re Urban Outfitters, Inc. Sec. Litig.*,
103 F. Supp. 3d 635 (E.D. Pa. 2015) .....................................................................................12

*Vrakas v. U.S. Steel Corp.*,
No. 17-cv-579, 2018 WL 4680314 (W.D. Pa. Sept. 29, 2018)................................................24

*In re Wash. Mut. Inc.*,
462 B.R. 137 (D. Del. 2011)...................................................................................................26

*Williams v. Globus Med. Inc.*,
869 F.3d 235 (3d Cir. 2017)....................................................................................................22

*In re Wilmington Tr. Sec. Litig.*,
29 F. Supp. 3d 432 (D. Del. 2014)............................................................................................3

*Winer Family Tr. v. Queen*,
No. 03-cv-4318, 2004 WL 2203709 (E.D. Pa. Sept. 27, 2004)................................................5

*Winer Family Tr. v. Queen*,
503 F.3d 319 (3d Cir. 2007).....................................................................................................20

*Yates v. Municipal Mortg. & Equity, LLC*,
744 F.3d 874 (4th Cir. 2014) ...................................................................................................25

**Statutes and Regulations**

17 C.F.R. § 229.105 ...............................................................................................................26

17 C.F.R. § 229.303(a)(3)(ii)...................................................................................................26

**Other Authorities**

*E. Ohman J:or Fonder AB v. NVIDIA Corp.*, 81 F.4th 918 (9th Cir. 2023),
    *cert. granted*, 144 S. Ct. 2655 (U.S. June 17, 2024) (No. 23-970)......................................7

**TABLE OF ABBREVIATIONS**

| Term | Definition |
|---|---|
| AdaptHealth | AdaptHealth Corp. |
| AdaptHealth Board | Board of Directors of AdaptHealth |
| AdaptHealth Stock | Shares of ownership of AdaptHealth listed for sale or purchase on the NASDAQ |
| AeroCare | AeroCare Holdings Inc., a company acquired by AdaptHealth in February 2021 that has no involvement in AdaptHealth's diabetes service line |
| Alleged Former Employees | Twelve anonymous individuals who are allegedly "former employees" of AdaptHealth's diabetes service line and on whom Lead Plaintiffs rely to support most of the Amended Complaint's allegations (A.C. ¶¶ 76–85, 87, 92–103, 113–28, 131–32, 134–136, 138–41, 143–51, 156–63, 208–09, 225, 230, 233, 236, 253, 255, 264, 270–72, 285–89, 313–15, 407–08, 418, 432) |
| Allegheny | Lead Plaintiff Allegheny County Employees' Retirement System |
| Amended Complaint or A.C. | Lead Plaintiffs' Amended Class Action Complaint for Violations of the Federal Securities Laws, dated May 23, 2024 (ECF No. 59) |
| CGMs | Continuous glucose monitors |
| Challenged Statements | E.A. Challenged Statements and/or S.A. Challenged Statements (Exhibit 63) |
| Company | AdaptHealth Corp. |

| Term | Definition |
|---|---|
| CMS | The Centers for Medicare and Medicaid Services, a federal agency responsible for administering Medicare and Medicaid |
| Defendants | AdaptHealth, Individual Defendants, and/or Underwriter Defendants |
| Delaware County Action | *Delaware County Employees Retirement System, et al. v. AdaptHealth Corp. f/k/a DFB Healthcare Acquisitions Corp., et al.*, No. 21–cv–03382 (HB) (E.D. Pa.) |
| Director Defendants | Alan Quasha, Richard Barasch, Terence Connors, Dr. Susan Weaver, Dale Wolf, Bradley Coppens, Joshua Parnes, and/or David S. Williams III |
| DMEPOS | Durable Medical Equipment, Prosthetics, Orthotics and Supplies |
| Cosenza Decl. | Declaration of Todd G. Cosenza in Support of the Defendants' Motion to Dismiss the Amended Class Action Complaint and Declaration of Todd G. Cosenza in Support of the Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss the Amended Class Action Complaint |
| E.A. Challenged Statements | Seventy-nine statements made between March 16, 2020 and November 7, 2023 that Lead Plaintiffs claim give rise to liability under the Securities Act (Exhibit 63) |
| E.A. Compliance Statements | E.A. Challenged Statement(s) concerning AdaptHealth's ability to comply with healthcare regulations and payors' billing requirements, the effectiveness of its compliance program, and its design and evaluation of effective internal controls (A.C. ¶¶ 211, 213, 215–23, 226, 229, 232–33) |
| E.A. Integration Statements | E.A. Challenged Statement(s) concerning AdaptHealth's integration efforts (A.C. ¶¶ 257–63) |
| E.A. Officer Defendants | All or any Officer Defendant(s) except Mr. Mullen |

| Term | Definition |
|------|------------|
| E.A. Revenue Statements | E.A. Challenged Statement(s) reporting AdaptHealth's overall revenues and EBITDA during the Putative Class Period (A.C. ¶ 206) |
| E.A. Risks Statements | E.A. Challenged Statement(s) disclosing potential risks (A.C. ¶¶ 266–67) |
| E.A. Technology Statements | E.A. Challenged Statement(s) describing the Company's technology as a "competitive advantage" or identifying the benefits of "technology" for various stakeholders' compliance, and acquisition integration (A.C. ¶¶ 239–52) |
| Exchange Act or E.A. | Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* (1934) |
| Exchange Act Claims | Lead Plaintiffs' Section 10(b) claim against the E.A. Officer Defendants, the Executive Defendants and AdaptHealth and/or Section 20(a) claim against the E.A. Officer Defendants, the Executive Defendants, and Alan Quasha |
| Executive Defendants | Shaw Rietkerk, Wendy Russalesi, and/or Rodney Carson |
| Exhibit(s) or Ex(s). | Exhibits to the Cosenza Decl. |
| Individual Defendants | Luke McGee, Stephen P. Griggs, Joshua Parnes, Jason A. Clemens, Shaw Rietkerk, Wendy Russalesi, Rodney Carson, Alan Quasha, Frank J. Mullen, Richard Barasch, Terence Connors, Dr. Susan Weaver, Dale Wolf, Bradley Coppens, and/or David S. Williams III |
| Innocuous Events | Five disclosures of AdaptHealth financial results and financial reporting controls that coincide with declines in the price of AdaptHealth stock (A.C. ¶¶ 167–68, 177; 180–81, 187; 189–90; 192–93,197–99, 202, 332) |

x

| Term | Definition |
|---|---|
| Isolated Billing Allegations | Lead Plaintiffs' allegations that AdaptHealth (i) "submitted reimbursement claims for CGMs using more expensive A-codes, inflating reimbursement amounts, and thereby allowing [it] to report higher amounts of expected revenue to investors" (A.C. ¶ 92), (ii) "shipp[ed] CGMs and monthly supplies that patients did not order and were not needed or covered by insurance" (A.C. ¶ 110), (iii) "alter[ed] doctor prescriptions" (A.C. ¶ 120), and (iv) "shipped and billed products without proper documentation" (A.C. ¶ 125; *see generally* A.C. ¶¶ 88–128) |
| Item 303 | Item 303 of SEC Regulation S-K, 17 C.F.R. § 229.303 |
| Item 105 | Item 105 of SEC Regulation S-K, 17 C.F.R. § 229.105 |
| Lead Plaintiffs | Allegheny County Employees' Retirement System, International Union of Operating Engineers, Local No. 793, Members Pension Benefit Trust of Ontario, and/or City of Tallahassee Pension Plan |
| Medicare | Federal health insurance program for people age sixty-five or older and certain people under age sixty-five with disabilities |
| Medicaid | Needs-based state-run insurance program for eligible people with limited income or resources |
| Motion or Mot. | Memorandum of Law In Support Of Defendants' Motion to Dismiss the Amended Class Action Complaint, as filed with the Court on July 23, 2024 (ECF 65-1). |
| Offering Documents | AdaptHealth's Form S-3, dated December 18, 2020 and AdaptHealth's Prospectus 424B5, dated January 7, 2021 |
| Officer Defendants | Luke McGee, Stephen P. Griggs, Joshua Parnes, Jason A. Clemens, and/or Frank J. Mullen |

| Term | Definition |
|---|---|
| Operations Allegations | Lead Plaintiffs' allegations that AdaptHealth (i) "cut compliance at acquired companies—and [] did not implement a Company-wide compliance system" (A.C. ¶ 131), (ii) "did not [] integrate acquisitions onto its [] systems" (A.C. at 58), and/or (iii) encountered "major problems" due to "belated integration efforts" (A.C. at 62) |
| Opposition or Opp. | Lead Plaintiffs' Opposition to Defendants' Motion to Dismiss the Amended Class Action Complaint, as filed with the Court on October 1, 2024 (ECF 72). |
| PSLRA | The Private Securities Litigation Reform Act, 15 U.S.C. 78u-4, *et seq*. (1995) |
| Putative Class Period | August 4, 2020 through November 7, 2023 (A.C. ¶ 1) |
| Risk Factors | Risk factor disclosures required by Item 105 SEC Regulation S-K, 17 C.F.R. § 229.105 |
| Rule | Federal Rules of Civil Procedure |
| S.A. Challenged Statements | Thirteen statements made between March 6, 2020 and January 7, 2021 that Lead Plaintiffs claim give rise to liability under the Securities Act (Exhibit 63) |
| S.A. Compliance Statements | S.A. Challenged Statements concerning AdaptHealth's ability to comply with healthcare regulations and payors' billing requirements, the effectiveness of its compliance program, and its design and evaluation of effective internal controls (A.C. ¶ 415) |
| S.A. Integration Statement | S.A. Challenged Statement concerning AdaptHealth's integration efforts (A.C. ¶ 419) |
| S.A. Officer Defendants | All Officer Defendants except Mr. Griggs (A.C. ¶¶ 374–77) |

| Term | Definition |
|---|---|
| S.A. Revenue Statements | S.A. Challenged Statements reporting AdaptHealth's overall revenues and EBITDA during the Putative Class Period (A.C. ¶¶ 403–05) |
| S.A. Risks Statements | S.A. Challenged Statements disclosing potential risks (A.C. ¶ 422) |
| S.A. Technology Statements | S.A. Challenged Statements describing the Company's technology as a "competitive advantage" or identifying the benefits of "technology" for various stakeholders' compliance, and acquisition integration (A.C. ¶¶ 411–12) |
| SEC | U.S. Securities and Exchange Commission |
| Secondary Offering or SPO | AdaptHealth's public offering that closed on January 8, 2021 |
| Section 10(b) claim | Lead Plaintiffs' claim for violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, as pled in Counts I and II of the Amended Complaint (A.C. ¶¶ 339–57) |
| Section 11 claim | Lead Plaintiffs' claim for violations of Section 11 of the Securities Act, 15 U.S.C. § 77k, as pled in Count III [sic] of the Amended Complaint (A.C. ¶¶ 437–45) |
| Section 15 claim | Lead Plaintiffs' claim for violations of Section 15 of the Securities Act, 15 U.S.C. § 77o, as pled in Count V of the Amended Complaint (A.C. ¶¶ 452–56) |
| Section 20(a) claim | Lead Plaintiffs' claim for violation of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t, as pled in Count III of the Amended Complaint (A.C. ¶¶ 358–61) |
| Securities Act or S.A. | Securities Act of 1933, 15 U.S.C. § 77a *et seq.* (1933) |

| Term | Definition |
|---|---|
| Securities Act Claims | Lead Plaintiffs' Section 11 claim against AdaptHealth, the S.A. Officer Defendants, the Director Defendants, and the Underwriter Defendants; Section 15 claim against the S.A. Officer Defendants and Director Defendants; and Section 12(a)(2) claim against the Underwriter Defendants |
| SOX | Sarbanes-Oxley Act, 15 U.S.C. §§ 7201 *et seq.* (2002) |
| Tallahassee | Lead Plaintiff City of Tallahassee Pension Plan |
| Underwriter Defendants | Deutsche Bank Securities Inc., Jefferies LLC, BofA Securities, Inc., Truist Securities, Inc., Robert W. Baird & Co. Incorporated, RBC Capital Markets, LLC, Stifel, Nicolaus & Company, Incorporated, UBS Securities LLC, Canaccord Genuity LLC, and Leerink Partners LLC |

## PRELIMINARY STATEMENT

Lead Plaintiffs' sprawling and scattershot sixty-page Opposition to Defendants' Motion engages in a tedious rehash and reformulation of their legally deficient Amended Complaint. Perhaps recognizing the glaring deficiencies in the Amended Complaint, Lead Plaintiffs seek to confuse issues of fact and law and obscure the lack of any actual merit to their claims. However, as demonstrated in the Motion, after cutting through Lead Plaintiffs' swaths of rampant speculation (both of the made-up variety and as purportedly alleged from third-hand accounts by anonymous, low-level, former employees), exaggerations, and mischaracterizations (including, surprisingly, of the allegations in their own Amended Complaint), it is clear that Lead Plaintiffs have utterly failed to allege any violation of the federal securities laws. Lead Plaintiffs' new suggestion that the alleged fraud—which is plainly alleged to involve isolated instances of improper billing practices in the diabetes service line and challenges integrating newly acquired diabetes businesses— somehow concerns AdaptHealth's entire business is puzzling, but changes nothing.

The Amended Complaint's deficiencies are numerous. Each is independently fatal to Lead Plaintiffs' claims and thus a sufficient basis for this Court to dismiss the Amended Complaint with prejudice. Specifically:

**Section 10(b) Claim**

- **No Loss Causation.** The Innocuous Events did not reveal the alleged fraud and have absolutely nothing to do with the E.A. Challenged Statements.

- **No Scienter.** There are no allegations indicating that any alleged maker of the E.A. Challenged Statements spoke with an intent to deceive, and Lead Plaintiffs' circumstantial evidence falls woefully short of raising any inference of fraudulent intent, let alone a strong one.

- **No Material Misrepresentation.** The E.A. Challenged Statements are not plausibly alleged with facts to have been false or misleading when made. The vast majority conveyed no information about the diabetes service line, and the rest were nothing more than inactionable puffery, opinions, or forward-looking statements.

**Section 20(a) and Section 15 Claims:**   Lead Plaintiffs ignore the culpable participation requirement and also fail to plead a primary violation or control.

**Section 11 Claim:**   There are no material misrepresentations alleged, and Lead Plaintiffs' paraphrase of the tracing requirement fails to allege standing.

Accordingly, the Court should grant Defendants' Motion in its entirety.

## ARGUMENT

### I.    THE AMENDED COMPLAINT FAILS TO STATE A SECTION 10(b) CLAIM.

For all of the reasons set forth in the Motion (Mot. at 13–37), Lead Plaintiffs have failed to plead a Section 10(b) claim.  The alleged fraud—that AdaptHealth sought to conceal from the market that its diabetes service line had isolated instances of billing irregularities (*i.e.*, the Isolated Billing Allegations) and challenges integrating its many, quickly acquired diabetes businesses (*i.e.*, the Operations Allegations)—is not plausible.  And what is more, the critical requirements to transform such a fraud into a securities violation are nowhere to be found in the Amended Complaint.  This Court should therefore dismiss the Section 10(b) claim.

#### A.    **Loss Causation Is Not Adequately Pled.**

Lead Plaintiffs have failed to adequately plead loss causation because the Amended Complaint does not identify any purported corrective disclosures—that is, factual information that *both* revealed the alleged fraud *and* was new to the market.  (Mot. at 33–37.)  Rather than address this deficiency, Lead Plaintiffs opt to obfuscate it through mischaracterizing legal authority, the Motion, and—in a novel choice—their own allegations.  (Opp. at 46–51.)  The issue here is simple: Do the Innocuous Events disclose the alleged fraud and, if so, was it for the first time?  Because the answer to both questions is "no," this Court should dismiss the Section 10(b) claim on loss causation grounds.

As an initial matter, many of the pleading requirements espoused in the Opposition are wrong. Lead Plaintiffs contend that they must provide Defendants only with "notice of the relevant economic loss" and what the causal connection to the misrepresentation "might be." (Opp. at 46.) Lead Plaintiffs further contend that a corrective disclosure "only needs to relate to the same subject" as the misrepresentation and that "a decline in performance . . . can constitute a corrective disclosure." (Opp. at 47–48.)[1] All of that is contrary to well-established law. A plaintiff—as even Lead Plaintiffs' cases confirm[2]—must allege that the alleged misrepresentation (here, the E.A. Challenged Statements) concealed something about the alleged fraud (here, the existence of the Isolated Billing Allegations and/or Operations Allegations) that, when disclosed, negatively affected the company's stock price. *See, e.g.*, *In re Eros*, 2021 WL 1560728, at *15 ("[P]laintiff must show that its 'losses are related specifically to the market's discovery of the misrepresentation and the corresponding decrease in price is due to that misrepresentation.'" (quoting *De Vito v. Liquid Holdings Grp., Inc.*, 2018 WL 6891832, at *39 (D.N.J. Dec. 31, 2018)); *Wilmington Tr.*, 29 F.3d at 450 (same). And the event that "reveal[s] at least part of the falsity of the alleged misrepresentation must also reveal *new* information to the market." *Hull v. Glob. Digit. Sols., Inc.*, 2017 WL 6493148, at *14 (D.N.J. Dec. 19, 2017) (emphasis added).

In any event, not even Lead Plaintiffs could marshal a defense of the Innocuous Events. Lead Plaintiffs declare that the Innocuous Events were "corrective" and "revealed the truth" (Opp. at 47) yet the Opposition (like the Amended Complaint) fails to offer any explanation as to *why*

---

[1] The Opposition misrepresents the law regarding the pleading standard. (Opp. at 46.) Although the Third Circuit has not specifically addressed the issue, *see Paxton v. Provention Bio, Inc.*, 2022 WL 3098236, at *18 n.23 (D.N.J. Aug. 4, 2022), the weight of authority favors a Rule 9(b) standard, *see Hall v. Johnson & Johnson*, 2019 WL 7207491, at *26–27 (D.N.J. Dec. 27, 2019) (listing four Circuits applying Rule 9(b)).

[2] Lead Plaintiffs' cites demonstrate the attenuated nature of their claims. In *In re Eros International PLC Securities Litigation*, 2021 WL 1560728 (D.N.J. Apr. 20, 2021), the corrective disclosures that survived the motion to dismiss expressly "clarif[ied]" or directly contradicted the company's representations. *Id.* at *11, *15. Additionally, *In re Wilmington Trust Securities Litigation*, 29 F. Supp. 3d 432 (D. Del. 2014), makes clear that the "stock price decline" must be caused by a "corrective disclosure of a previously undisclosed truth." *Id.* at 450.

the Innocuous Events relate *at all* to the E.A. Challenged Statements or the alleged fraud.  None of the Innocuous Events mention those Statements.  None relayed any information inconsistent with those Statements.  And, most of all, none concern the Isolated Billing and/or Operations Allegations or (in most cases) the Company's diabetes service line.  In fact, it is telling that not even the analyst reports that Lead Plaintiffs reference (Exs. 67–72) remotely suggest that any analyst thought a fraud was being revealed by the Innocuous Events.

The reason for this is clear:  The Innocuous Events *did not* reveal the alleged fraud.  While the logical leaps necessary to justify Lead Plaintiffs' assertions are unknown, a simple comparison of the Innocuous Events to the E.A. Challenged Statements (*compare* Ex. 66, *with* Ex. 63) confirms there is not even a nebulous connection here.  For example, referencing "implicit price concessions" with respect to financial reporting processes for AdaptHealth's entire business is too high-level and generalized to necessarily refer to the diabetes service line (one of five service lines) or the Isolated Billing and/or Operations Allegations.[3]  (Mot. at 36–37); *see, e.g.*, *In re Aurora Cannabis Inc. Sec. Litig.*, 2023 WL 5508831, at *5 (D.N.J. Aug. 24, 2023) (no loss causation where "disclosures did not reveal the subject or false nature of alleged fraud").  Similarly, merely announcing negative earnings results, even when specific to the diabetes service line, reveals nothing about any purported role of the Isolated Billing and/or Operations Allegations.  *See, e.g.*, *In re Tellium, Inc. Sec. Litig.*, 2005 WL 2090254, at *3–4 (D.N.J. Aug. 26, 2005) (no loss causation where disclosing lower revenues did not expose alleged sales scheme).  Nor does announcing a goodwill write-down reveal or indicate an "inability to successfully integrate acquisitions."

This deficiency dooms the Section 10(b) claim and requires dismissal.  (Mot. at 35–36); *see, e.g.*, *Nat'l Junior Baseball League v. Pharmanet Dev. Grp., Inc.*, 720 F. Supp. 2d 517, 561,

---

[3]  Lead Plaintiffs' attempt to distinguish Defendants' cases through vague and conclusory parentheticals is incorrect. Lead Plaintiffs also do not deny that those cases are controlling and persuasive legal authority.  (*See* Mot. at 35–36.)

- 4 -

563 (D.N.J. 2010) (dismissing complaint where "no allegations anywhere . . . that the market learned" of the alleged fraud); *In re Intelligroup Sec. Litig.*, 468 F. Supp. 2d 670, 695 (D.N.J. 2006) (no loss causation based on "bare temporal proximity"); *In re Tellium*, 2005 WL 2090254, at *4 (no loss causation for "bad news that does not disclose the fraud").

Even if the Court feels compelled to address Lead Plaintiffs' strawman counterpoints (Opp. at 47–50), those can be easily disposed of without warranting a different result.

- Defendants never argued that a corrective disclosure must "mirror" earlier misrepresentations, and that is not the standard Defendants applied. (Opp. at 47.)

- Defendants never argued that a fraud cannot be "revealed through 'a series of partial corrective disclosures.'" Rather, Defendants pointed out that the Amended Complaint does not adequately allege that that is what happened because the allegedly corrective information was all the same and known early in the Putative Class Period.[4]

- Defendants never invoked the "truth on the market" defense.[5] *The Capitol Forum* articles disclose the same exact information that Lead Plaintiffs claim was revealed by the Innocuous Events. Thus, Defendants are challenging Lead Plaintiffs' claim that the Innocuous Events contained *new* information given that the articles were released years before four of the five Innocuous Events.

- Lead Plaintiffs' dissemination argument regarding *The Capitol Forum* articles is not alleged in the Amended Complaint. That said, it is notable that Lead Plaintiffs are

---

[4] Lead Plaintiffs' attempt to distinguish Defendants' cases misses the mark. (*See* Opp. at 50 n.14.) Critically, Lead Plaintiffs mischaracterize the facts of their own claim by failing to explain how *The Capitol Forum* articles or RBC report did anything other than analyze public data or report on existing facts.

[5] "The 'truth on the market defense' recognizes that a statement or omission is materially misleading only if the allegedly undisclosed facts have not already entered the market." *Winer Family Tr. v. Queen*, 2004 WL 2203709, at *4 (E.D. Pa. Sept. 27, 2004). Here, Defendants are not arguing about the "truth" of the information in *The Capitol Forum* articles or how a reasonable investor would consider the total mix of available information.

dismissing the very source of their allegations because it is "behind a paywall" when the same situation applies to the RBC report (Ex. 57) that Lead Plaintiffs assert revealed the alleged fraud to the market.

• Defrauded investors must plead that the very misrepresentation at issue proximately caused them an economic loss. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345–46 (2005). However, there are no allegations in the Amended Complaint that address why Lead Plaintiffs believe these Innocuous Events played any part in the stock decline (other than the fact they occurred on the same date), which is solely their burden at this stage.[6]

## B. Scienter Is Not Adequately Pled.

Lead Plaintiffs have failed to plead a strong, more-plausible-than-not inference of scienter. The deficiencies raised by Defendants (Mot. at 26–33) are not explained away by Lead Plaintiffs declaring the Amended Complaint sufficient and playing fast-and-loose with their allegations. The Court should dismiss the Section 10(b) claim on scienter grounds.

### 1. The Motion Properly Analyzed The Scienter Allegations.

Lead Plaintiffs devote much of their Opposition to creating confusion over the pleading requirements for "scienter." The law on that issue, however, is clear. Lead Plaintiffs criticize Defendants for "dismembering and analyzing Plaintiffs' scienter allegations independently." (Opp. at 37.) But the Third Circuit "ha[s] explicitly approved of scienter analyses that assess individual categories of scienter allegations [before] ultimately consider[ing] the allegations as a whole." *In re Hertz Glob. Holdings Inc.*, 905 F.3d 106, 115 (3d Cir. 2018). Lead Plaintiffs also

---

[6] Lead Plaintiffs also fail to distinguish Defendants' cases. (Opp. at 50 n.15.) Putting aside their blatant mischaracterizations, they do not—and cannot—deny the points of black-letter law for which these cases are cited, the applicability of which remains unchanged. Lead Plaintiffs also conveniently ignore that other intervening events may more plausibly explain the decline. (*See* Mot. at 36–37 (referencing CEO departure and disappointing financial results).)

claim circumstantial evidence is permitted.  (Opp. at 36.)  But, in the Third Circuit, the strength of such evidence "must be correspondingly greater" than direct evidence, *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 238–39 (3d Cir. 2004); *see also In re Amarin Corp. PLC Sec. Litig.*, 2021 WL 1171669, at *18–19 (D.N.J. Mar. 29, 2021), whereas the "evidence" here falls short of that requirement.[7]

### 2.    No Strong Inference Of Scienter From The Few Allegations Regarding The Executive Defendants And/Or The E.A. Officer Defendants.

Lead Plaintiffs' defendant-specific allegations fail to raise any inference of scienter.

***Mr. Rietkerk.***  The Amended Complaint alleges solely that Mr. Rietkerk *may* have been awarded a bonus in 2021, and that allegation is abandoned in the Opposition.  (*See* Mot. at 27–28.)  The Opposition does attempt to link Mr. Rietkerk to Ms. Russalesi's statement about "the executive leadership team" (Opp. at 40), but that fails because (i) the link is not alleged in the Amended Complaint, (ii) Lead Plaintiffs are flagrantly misquoting Ms. Russalesi, who says nothing about Mr. Rietkerk or the role of executives in her department's day-to-day work (*see* Ex. 31 at 15–16), and (iii) even if Ms. Russalesi had made the misquoted statement, it would not undermine the E.A. Challenged Statements *made by* Mr. Rietkerk or establish *his* personal motive.

***Ms. Russalesi.***  The Amended Complaint alleges that Ms. Russalesi may have received a bonus in 2021, which fails for the same reasons noted as to Mr. Rietkerk.  (*See* Mot. at 27–28.)  The Amended Complaint also alleges that Ms. Russalesi may have met with someone who was a supervisor of an Alleged Former Employee.  Such allegations are too barebones and too speculative to establish scienter (*see id.*), which not even Lead Plaintiffs deny.  Rather, Lead Plaintiffs grossly mischaracterize the Amended Complaint to presumably create the specificity

---

[7]  The Supreme Court granted certiorari to address the role of circumstantial evidence in pleading scienter.  *See E. Ohman J:or Fonder AB v. NVIDIA Corp.*, 81 F.4th 918 (9th Cir. 2023), *cert. granted*, 144 S. Ct. 2655 (U.S. June 17, 2024) (No. 23-970).  The ruling is expected soon.

that is required (as reflected in their own out-of-circuit case)[8] but simply does not exist here.  That fails too.  Nowhere in the Amended Complaint are there allegations of "rampant" employee complaints or meetings attended by Ms. Russalesi where employee complaints were discussed.  In fact, the Amended Complaint is so silent—never going beyond Lead Plaintiffs' pontification that these topics *should have been* discussed—that it is unclear whether any supposed meeting involving Ms. Russalesi ever occurred and, if it did, when and what was discussed.

*Mr. Carson.*  The Amended Complaint alleges that Mr. Carson may have been awarded an incentive bonus in 2021 (Mot. at 27–28) and the Opposition tries to link Mr. Carson to the work of Ms. Russalesi's department (Opp. at 20, 40), both of which fail for the same reasons noted as to Mr. Rietkerk.  (*See* Mot. at 27–28.)  The Amended Complaint also alleges that Mr. Carson was the boss of someone who was the boss of someone who worked closely with someone who was in meetings with an Alleged Former Employee.  This fails for the same reasons noted as to Ms. Russalesi.  There are *no allegations* in the Amended Complaint about an Alleged Former Employee directly speaking to Mr. Carson or having any kind of direct communication with him.  Unlike the actual exchange of information in Lead Plaintiffs' cases,[9] the Amended Complaint's allegations are so non-specific and attenuated that it is completely unknown what information was allegedly reported through the game of telephone described here or, more importantly, that a reporting event happened *at all*.

*Mr. McGee.*  The Amended Complaint alleges that Mr. McGee was involved in identifying and remediating material weaknesses (*id.* at 29), and the Opposition portrays that allegation as an

---

[8]  *Phoenix Ins. Co. v. ATI Physical Therapy, Inc.* involves a former employee who, unlike here, personally participated in monthly calls with individual defendants.  690 F. Supp. 3d 862, 891 (N.D. Ill. 2023).

[9]  *See, e.g.*, *Oklahoma Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*, 58 F.4th 195, 216 (5th Cir. 2023) (former employee prepared materials for his superior to present directly to the CEO); *City of Warwick Ret. Sys. v. Catalent, Inc.*, 2024 WL 3219616, at *13–15 (D.N.J. June 28, 2024) (confidential witnesses had direct interactions with defendants, personally attended meetings, and personally reviewed board materials).

"admission[] of [his] direct involvement" in the alleged fraud (Opp. at 40–41). This precise argument—oversight means access to and knowledge of every related piece of information—has been expressly rejected by courts in this Circuit.[10] *See, e.g.*, *Baker v. MBNA Corp.*, 2007 WL 2009673, at *7 (D. Del. July 6, 2007) ("[A]ccess is not sufficient to meet the 'strong inference' requirement[.]"); *Ascena Retail Grp.*, 2022 WL 2314890, at *10 (no scienter based on "'generalized imputations of knowledge' that defendants 'must have known' a statement was false by virtue of their positions"); *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 289–90 (D.N.J. 2007) (no scienter based solely on erroneous SOX certifications). And nothing in the Amended Complaint or the Opposition provides any logical connection between overseeing the Company's internal controls for financial reporting purposes and having knowledge of every billing practice (and purported deviation) by the Company's thousands of low-level employees, particularly given that none were expressly identified as a material weakness.[11]

The Amended Complaint also alleges that Mr. McGee received a bonus. (Mot. at 30.) While ignored by the Opposition, that is too generalized a motive to infer fraudulent intent. In fact, the weakness of this allegation is amplified here, given that the bonus was paid once at the beginning of the Putative Class Period *and* that the bonus was not paid based on metrics with any apparent connection to the alleged fraud or the issuance of the E.A. Challenged Statements. Now (not in the Amended Complaint), Lead Plaintiffs say the financial motive to obtain the bonus led Mr. McGee to sacrifice compliance and successful integration. (Opp. at 44–45.) But that is beside

---

[10] Lead Plaintiffs fail to distinguish Defendants' cases once again. (Opp. at 41.) For example, *In re Ascena Retail Group, Inc. Securities Litigation* makes clear that even awareness of underlying weaknesses in the Company's business "do not constitute culpable conduct demonstrating the necessary scienter for securities fraud." 2022 WL 2314890, at *10 (D.N.J. June 28, 2022).

[11] Lead Plaintiffs' out-of-circuit cases support Defendants' position. *See, e.g.*, *Lowry v. RTI Surgical Holdings, Inc.*, 532 F. Supp. 3d 652, 661 (N.D. Ill. 2021) (plaintiff specifically alleged that individual defendants directed fraudulent shipments); *Luna v. Marvell Tech. Grp.*, 2017 WL 2171273, at *5 (N.D. Cal. May 17, 2017) (new training program for executives, rather than low-level employees, supported scienter).

the point.  What matters is why he would have been allegedly willing to mislead the market about compliance and integration efforts for many years, or perhaps how his E.A. Challenged Statements enhanced his ability to obtain a bonus.[12]

Finally, the Amended Complaint attempts to allege scienter based solely on the fact that Mr. McGee made certain E.A. Challenged Statements.  (Mot. at 32.)  This fails, even with Lead Plaintiffs' reframing in the Opposition, because there are absolutely no well-pled allegations (only Lead Plaintiffs' say-so) that he knew or should have known about the Isolated Billing and/or Operations Allegations, or that those Allegations reflected information that would have prevented his E.A. Challenged Statements from being false or misleading.  That is the missing connection (as confirmed by Lead Plaintiffs' cases)[13] that makes it illogical to infer any fraudulent intent here.

*Mr. Griggs.*  Despite the Opposition's reference to multiple "executive departures" (Opp. at 45), the Amended Complaint only refers to the resignation of Mr. Griggs (Mot. at 30–31).  Those allegations are completely silent as to the circumstances surrounding his departure, and merely point to the fact that it was announced after the Company reported a decline in diabetes revenue.  But nothing about that suggests fraud.  *See Hertz*, 905 F.3d at 119 ("Changes in leadership are only to be expected when leadership fails.").  In fact, that same announcement reveals that Mr. Griggs agreed to stay with the Company for an additional two months to assist with the transition (Ex. 21), which weighs against inferring a departure over wrongdoing.  In short, the mere occurrence of his departure is not enough.[14]  *See Hertz*, 905 F.3d at 118 ("[T]here must be particularized allegations connecting the departures to the alleged fraud."); *Laasko v. Endo Int'l,*

---

[12]  While conflated in the Opposition, the Alleged Former Employees' reports *did not* concern Mr. McGee or any other Defendant.  Nor is it apparent that the Alleged Former Employees had insight into executive compensation.

[13]  Lead Plaintiffs' cases involve direct, specific questions from analysts *about the alleged misconduct*, which the defendants expressly denied.  *See Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 269–70 (3d Cir. 2009).

[14]  Lead Plaintiffs' cases agree.  *See Hertz*, 905 F.3d at 118–19 (company "freely acknowledged that it replaced executive- and management-level employees as a remedial measure"); *In re CenturyLink Sales Pracs. & Sec. Litig.*, 403 F. Supp. 3d 712, 720, 734 (D. Minn. 2019) (resignation occurred just after state AG investigation announced).

*PLC*, 2022 WL 3444038, at *8 (D.N.J. Aug. 17, 2022) ("[E]xecutives resigning . . . without a plausible link to the alleged fraud has little to no probative value.").

The Amended Complaint also alleges that Mr. Griggs (i) may have participated in meetings with someone who supervised an Alleged Former Employee, (ii) was the boss of someone who was the boss of someone who worked closely with someone who was in meetings with an Alleged Former Employee, (iii) was involved in identifying and remediating material weaknesses, (iv) received a bonus, and (v) made certain E.A. Challenged Statements. Such allegations fail for the same reasons noted as to Ms. Russalesi, Mr. Carson, and Mr. McGee.

***Mr. Parnes.*** The Amended Complaint alleges that Mr. Parnes (i) may have participated in meetings with someone who was a supervisor of an Alleged Former Employee, (ii) received a bonus, and (iii) made certain E.A. Challenged Statements. Such allegations fail for the same reasons noted as to Ms. Russalesi and Mr. McGee.

***Mr. Clemens.*** The Amended Complaint alleges that Mr. Clemens (i) was involved in identifying and remediating material weaknesses, (ii) received a bonus, and (iii) made certain E.A. Challenged Statements. Such allegations fail for the same reasons noted as to Mr. McGee.

### 3. No Strong Inference Of Scienter From "Circumstantial" Allegations.

Lead Plaintiffs' so-called "circumstantial evidence" of scienter also fails to raise an inference of scienter.

***Alleged Regulatory Actions.*** Lead Plaintiffs argue that, despite the fact that none of the cited regulatory or legal matters relate to AdaptHealth's diabetes service line, such matters still establish scienter because the "Complaint is not limited to the diabetes segment." (Opp. at 44.) This is nonsensical. The alleged fraud is rooted in the diabetes service line, and, given the attenuation of these regulatory and legal matters to the Isolated Billing and/or Operations

- 11 -

Allegations *and* the E.A. Challenged Statements, it is impossible to understand how they could have put any Executive or E.A. Officer Defendant on notice of the alleged fraud.  (Mot. at 31–32.)

*Alleged Core Operations.*  Lead Plaintiffs argue that "compliance with applicable billing regulations and the integration of acquisitions were 'core operations' critical to the success of the Company."  (Opp. at 42.)  However, Lead Plaintiffs make no effort to explain why those matters are "core operations."  Nor do they allege "specific information conveyed to management and related to the fraud," which is required for such allegations to "support a finding of scienter." *Martin v. GNC Holdings, Inc.*, 757 F. App'x 151, 155 (3d Cir. 2018).  Lead Plaintiffs' cases agree.[15]  (*See* Mot. at 27–32.)

*Alleged Sales Quotas.*  Lead Plaintiffs assert that "AdaptHealth management pressured employees to meet unrealistic sales goals."  (Opp. at 39.)  However, there are absolutely no allegations about why these quotas were unreasonable or even a description of what a reasonable quota would be.  Even assuming unreasonable quotas existed, Lead Plaintiffs have not done enough to transform their speculation into evidence of fraudulent intent.  For one thing, the non-binding authority to which Lead Plaintiffs cite does not stand for the proposition that merely alleging unrealistic sales goals is enough to plead scienter.[16]  For another, Lead Plaintiffs admit that there is nothing linking an Executive or E.A. Officer Defendant to these quotas other than the generic claim that their "direct reports" implemented them.  And, most of all, Lead Plaintiffs do not explain why intentional billing errors would have been the only way to satisfy these quotas.

---

[15]  *See, e.g.*, *In re Dr. Reddy's Lab'y Ltd. Sec. Litig.*, 2019 WL 1299673, at *16 (D.N.J. Mar. 21, 2019) ("[M]isstatements and omissions made on 'core matters of central importance' . . .  give[] rise to an inference of scienter when taken together with additional allegations connecting the executives' positions to their knowledge."); *In re Urban Outfitters, Inc. Sec. Litig.*, 103 F. Supp. 3d 635, 654 (E.D. Pa. 2015) (same).

[16]  *See, e.g.*, *San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*, 2024 WL 1898512, at *10 (S.D.N.Y. May 1, 2024) ("[A]ggressive sales targets do not necessarily suggest wrongdoing."); *CenturyLink*, 403 F. Supp. 3d at 720, 730–31 (executive defendants, including the CEO, specifically reviewed complaints related to sales quotas and ignored them); *Lowry v. RTI Surgical Holdings, Inc.*, 532 F. Supp. 3d 652, 661–62 (N.D. Ill. 2021) (specific facts plausibly indicating that some defendants directed account managers to ship products early).

***Alleged Magnitude and Pervasiveness of the Fraud.***  Finally, Lead Plaintiffs' claim that the alleged "magnitude and pervasiveness of [] AdaptHealth's illicit billing practices supports scienter" (Opp. at 43) is an opinion, not a fact (Mot. at 29).  That opinion appears to be drawn from (i) Alleged Former Employees' impressions, (ii) Lead Plaintiffs' unexplained analysis of data from four of fifty-six Medicaid programs,[17] and (iii) two CMS notices, both concerning entirely different billing practices at non-diabetes businesses (with one issued before the Putative Class Period).  Rather than defend that incredulous view, Lead Plaintiffs criticize Defendants for not disproving their data—which is not proper at this stage—and double down on the Alleged Former Employees' accounts, even though those accounts are limited in scope because the Amended Complaint does not allege that they had insight into, or a reliable basis for opining on, the billing practices of *all* diabetes orders at their employer or across *all* of AdaptHealth's diabetes businesses.[18]

### 4.    No Extraordinary Circumstances To Establish Corporate Scienter.

Having failed to raise a strong inference of scienter as to any Executive or E.A. Officer Defendant, Lead Plaintiffs can only avoid dismissal on scienter grounds *if* they are able to plead scienter under the doctrine of corporate scienter.  That effort—*i.e.*, conclusory assertions that "illicit practices were pervasive and known to management" (Opp. at 46)—falls short of the "extraordinary" circumstances required.  (*See* Mot. at 33.)  In any event, even if the alleged conduct was pervasive, Lead Plaintiffs would still fail to allege corporate scienter because nothing about that conduct suggests the Executive or E.A. Officer Defendants must have known their E.A. Challenged Statements were false.  *See City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*,

---

[17]  Lead Plaintiffs' data analysis (without context) is completely irrelevant.  (*See* Mot. at 5–7 & 18 n.29.)

[18]  For example, Lead Plaintiffs refer to the Alleged Former Employees and/or other unnamed individuals as "high-level" executives.  (Opp. at 22.)  However, that is grossly exaggerated.  These individuals are alleged to have been legacy employees from acquired companies.  They did not work out of AdaptHealth headquarters, and they were not listed on AdaptHealth's website or in SEC filings.  Far from a "fly on every relevant wall" issue, none are alleged to have ever been in the same room as any Executive or E.A. Officer Defendant.

442 F. App'x 672, 676 (3d Cir. 2011) (not "extraordinary" despite long-lasting price fixing affecting "substantial portion" of business).

### C.    A Material Misrepresentation Is Not Adequately Pled.

The third and final deficiency that plagues the Section 10(b) claim is monumental. Lead Plaintiffs have asserted the market was defrauded by statements that were neither false, misleading, nor connected to the alleged fraud at all. Accordingly, the Court should dismiss the Section 10(b) claim for failure to allege a material misrepresentation.

#### 1.    E.A. Revenue Statements

The E.A. Revenue Statements present a panoply of problems that also plague the other E.A. Challenged Statements: speculation, innuendo, tangents, and "because Lead Plaintiffs say so" arguments. The E.A. Revenue Statements never attributed the Company's financial success to the diabetes service line or its billing prowess for diabetes, and so the "source" of those revenues cannot be the linchpin for showing falsity. *See, e.g.*, *In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 404 (S.D.N.Y. 2016) ("If accurately reporting the percentage growth of diabetes products is itself not actionable under the securities laws, which it is not, than it cannot be the case that merely reporting that growth in more colorful words, without attributing the sales growth to a particular factor that is implicated in the alleged fraud, is actionable."). And, most of all, Lead Plaintiffs assume and assert—but do not allege with facts—that the Isolated Billing Allegations resulted in inflated revenues being disclosed through the E.A. Revenue Statements.[19]

First and foremost, AdaptHealth's methodology for calculating revenues (which accompanies each E.A. Revenue Statement) reflects AdaptHealth's definition of the term "revenue" for purposes of its revenue disclosures (*i.e.*, what that figure does and does not include).

---

[19]  Although the Amended Complaint includes a few allegations about alleged misconduct at a single non-diabetes service line company—AeroCare, which specializes in sleep apnea—they are entirely speculative. (A.C. ¶¶ 86, 133.)

That definition is fundamental to considering whether the E.A. Revenue Statements were false or misleading.  After all, the Amended Complaint does not allege that AdaptHealth improperly defined revenue or that the Company failed to follow its own definition; rather, the Amended Complaint challenges only whether the disclosure of revenues (*as AdaptHealth defined it*) was accurate.  And nothing that Lead Plaintiffs allege makes clear with facts that revenues (*as AdaptHealth defined it*) could have been inflated by the Isolated Billing Allegations.

Even putting aside AdaptHealth's methodology, the Amended Complaint is devoid of any facts suggesting that the billing practices of a few low-level employees *could* have a direct and significant impact on the Company's overall revenues.  The Medicaid data is hardly a representative sample, and Lead Plaintiffs' unknown analysis appears to ignore common-sense billing complexities (*e.g.*, no allegations regarding applicable rules, whether initial versus final codes were analyzed, whether the claim was paid and in accordance with which code, etc.).  (Mot. at 6–7; *supra* at 13–14 & n.17.)  Similarly, the Alleged Former Employees' reports merely reflect the unsubstantiated guesses of two former employees, employees who professed no basis for having insight into all claims processed by Solara or the other four diabetes businesses.[20]

### 2.    E.A. Compliance Statements

Lead Plaintiffs' defense of the E.A. Compliance Statements relies on flagrant misrepresentations of the E.A. Compliance Statements and their own allegations.  Nevertheless, Defendants' concerns (Mot. at 18–23) are not rebutted.  The E.A. Compliance Statements reflect subjective and/or general statements of optimism regarding AdaptHealth's competitive strengths

---

[20]  Lead Plaintiffs' sole case is inapposite.  In *City of Sunrise General Employees' Retirement Plan v. FleetCor Technologies., Inc*., the court credited the accounts of "thirteen[] low-ranking confidential witnesses" who worked at the defendant entity, but that entity was not comprised of numerous different service lines or dozens of acquired companies, as is the case here.  2018 WL 4293143, at *7–8 (N.D. Ga. May 15, 2018).  Moreover, the court's analysis was based on precedent in the Eleventh Circuit, which is not applicable here.  *Id.*

(*e.g.*, A.C. ¶ 213 ("[D]iabetes . . . is very well suited to our core competencies in resupply, billing and referral relationships.'")) and aspirational goals (*e.g.*, A.C. ¶ 222 ("Our program has a strong foundation in ethics and integrity, raises a consistent awareness of compliance throughout the business, and prevents misconduct, which allows us to achieve our goal of delivering the best patient care . . . ."), or are too general or vague for a reasonable investor to rely upon them (*e.g.*, A.C. ¶ 217 ("This isn't a business where we're just shipping boxes . . . . We are managing these patients' lives. . . . We're teaching.  We're navigating the maze of reimbursement from thousands of insurance companies.").  There is nothing about those Statements—which the Court can review at Exhibit 63—that portray any concrete information or guarantee regarding the effectiveness of the Company's compliance efforts.  *See In re ITT Educ. Servs., Inc. Sec. & S'holder Derivatives Litig.*, 859 F. Supp. 2d 572, 581 (S.D.N.Y. 2012).[21]  As such, the E.A. Compliance Statements constitute puffery and thus are inactionable as a matter of law.

Contrary to Lead Plaintiffs' arguments, similar language is routinely held to be inactionable on a motion to dismiss, including as to compliance-related topics.[22]  (*See* Mot. at 20 (collecting cases)); *see also In re Aetna, Inc. Sec. Litig.*, 617 F.3d 272, 280 n.7, 284 (3d Cir. 2010) ("we continue to adhere to a disciplined pricing policy" and "solid and balanced growth that is representative of our dedication to disciplined pricing" are puffery); *S.E. Penn. Transp. Auth. v. Orrstown Fin. Servs., Inc.*, 2015 WL 3833849, at *19 (M.D. Pa. June 22, 2015) ("[w]e view sound credit practices and stringent underwriting standards as an integral component of our continued success" is puffery); *Howard v. Arconic Inc.*, 395 F. Supp. 3d 516, 549–50 (W.D. Pa. 2019)

---

[21]  The lack of a voluntary disclosure obligation is not obviated by choosing to speak.  Lead Plaintiffs have not explained why in speaking opaquely about compliance, it was necessary to disclose the Isolated Billing Allegations.

[22]  Lead Plaintiffs' analyst exception is contrary to law.  *See Schwab Cap. Tr. v. Celgene Corp.*, 2021 WL 1085474, at *5 (D.N.J. Mar. 22, 2021) (response to analyst question inactionable puffery); *In re Anadigics, Inc., Sec. Litig.*, 2011 WL 4594845, at *23 (D.N.J. Sept. 30, 2011), *aff'd*, 484 F. App'x 742 (3d Cir. 2012) (unpublished) (same); *cf. In re Grab Holdings Ltd. Sec. Litig.*, 2024 WL 1076277, at *24 (S.D.N.Y. Mar. 12, 2024) (no "per se rule" that every response to an analyst question "no matter how vacuous or jargon-laden that statement might be" is actionable).

(statements concerning culture of compliance are puffery).  And it is not reasonable for Lead Plaintiffs to contend that merely having or mentioning compliance efforts is tantamount to representing a complete eradication or prevention of any possible billing problem.  *See Howard*, 395 F. Supp. 3d at 549 ("no reasonable investor would plausibly rely on a statement such as '[o]ur Ethics and Compliance Program drives a global culture'" to conclude "products would always be used safely" and "[defendant] did not guarantee 100% end-user compliance, 100% of the time"); *In re Telefonaktiebolaget LM Ericsson Sec. Litig.*, 675 F. Supp. 3d 273, 292 (E.D.N.Y. 2023), *aff'd sub nom. Boston Ret. Sys. v. Telefonaktiebolaget LM Ericsson*, 2024 WL 4023842 (2d Cir. Sept. 3, 2024) ("compliance- and policy-related statements" inactionable because of "generality" and "[d]efendants never promised perfect compliance").

Furthermore, the E.A. Compliance Statements are also inactionable because they are not false or misleading based on the Isolated Billing Allegations.  Twenty-eight of the thirty-one Statements have absolutely nothing to do with the diabetes service line, and the remaining two do not address any aspect of the Isolated Billing Allegations.  The problem remains that the Alleged Former Employees' reports not only lack the specificity that is required (*see* Mot. at 19), they also do not reveal any information that is inconsistent with the E.A. Compliance Statements.

### 3.    Other E.A. Challenged Statements

The remaining E.A. Challenged Statements are similarly deficient (Mot. at 23–26) and also cannot sustain the Section 10(b) claim.

***E.A. Integration Statements.***  Lead Plaintiffs argue that the E.A. Integration Statements are actionable because they concern "technology" and some Alleged Former Employees did not recall using certain programs or systems that may qualify as technology or did recall problems that could have been prevented by technology.  (Opp. at 13–14.)  This misses the mark.  It is not clear what specific program or system, if any, was being referenced by the broad language of the E.A.

- 17 -

Integration Statements. Nor is it fair to construe those Statements as representing that the entire Company would use the same program or system. And the fact that the Company pointed to specific uses of technology at some point does not help; Lead Plaintiffs cannot thread together disjointed information to support their illogical inferences. At bottom, the full context of the E.A. Integration Statements must be evaluated, which confirm they are puffery.

*E.A. Technology Statements.* The E.A. Technology Statements fail for the same reasons as the E.A. Integration Statements. (Mot. at 24.) Helpfully, though, Lead Plaintiffs concede that the E.A. Technology Statements have nothing to do with the diabetes service line (so could not have been false because of the Isolated Billing Allegations) and that the E.A. Technology Statements "touted" the Company (which is the very definition of puffery). (Opp. at 30–31.)

*E.A. Risk Statements.* Lead Plaintiffs contend the E.A. Risk Statements are actionable because "the very risks that Defendants portrayed as hypothetical had already materialized." (Opp. at 33–34.) But that is not based on any factual allegations in the Amended Complaint, which is presumably why the Opposition focuses on quoting the E.A. Risk Statements instead of identifying alleged facts that show the Isolated Billing Allegations constituted a material risk. In any event, the PSLRA safe harbor protects the E.A. Risk Statements because Lead Plaintiffs have not "show[n] that defendants *knew* [any] statement was false or misleading." *In re Discovery Labs. Sec. Litig.*, 2007 WL 789432, at *2 (E.D. Pa. Mar. 15, 2007). (*See supra* § I.B.)

*SOX Certifications.* Lead Plaintiffs lean heavily into their argument that the SOX certifications are actionable because they were later admitted to be false. (Opp. at 34–35.) That argument, however, is belied by the plain language of the SOX certifications referenced in the Opposition. (*Id.*) Moreover, Lead Plaintiffs have failed to provide a reasonable basis to infer that such generalized statements reveal any information about the specific subject of billing practices

within the diabetes service line, or that they were not believed by the speakers. *See, e.g.*, *In re Cognizant Tech. Sols. Corp. Sec. Litig.*, 2018 WL 3772675, at \*25–26 (D.N.J. Aug. 8, 2018) (SOX certifications inactionable without allegations defendants did not believe opinions).

### 4. All Defendants Are Not "Makers" Of E.A. Challenged Statements.

In the unlikely event an E.A. Challenged Statement is viable—which Defendants strongly contend is not the case—the Court must next identify which Executive or E.A. Officer Defendant made that Statement and dismiss all other Defendants as matter of law. (Ex. 64; Mot. at 15.) This is the implication of *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011), which Lead Plaintiffs acknowledge. (Opp. at 20 (noting "utter[]" or "sign[]" rule).)

### D. Defendants Have Moved To Dismiss The Entire Section 10(b) Claim.

In a desperate attempt to save some aspect of the Amended Complaint, Lead Plaintiffs contend that Defendants only moved to dismiss "Section 10(b) claims based on Rule 10b-5(b)" so the "Rule 10b-5(a) and (c)" claim "should stand." (Opp. at 51.) But Lead Plaintiffs are wrong and their argument is frivolous. Defendants expressly seek dismissal of the *entire* Amended Complaint, including all Exchange Act Claims. (*See* Mot. at 13, 15–16, 33, 51.) Indeed, the Motion refers to "Section 10(b) and Rule 10b-5" without specifying any particular subsection (Mot. at 13, 37), and the Motion uses the same shorthand adopted by many courts to refer to all purported variants of a Section 10(b) claim: "Section 10(b) claim." [23] In addition, the Motion challenges at length the existence of any alleged fraud or scheme. (Mot. at 17 n.28, 19, 23.)

---

[23] *See In re Ocugen, Inc. Sec. Litig.*, 659 F. Supp. 3d 572, 597–98 (E.D. Pa. 2023), *aff'd*, 2024 WL 1209513 (3d Cir. Mar. 21, 2024) ("Though liability under Rules 10b-5(a) and (c) may attach despite dismissing a 10b-5(b) claim, as a baseline the conduct supporting 10b-5(a) or (c) claims must involve statements that qualify as false or misleading or must involve entirely separate conduct apart from the statements supporting a 10b-5(b) claim."); *see also Takata v. Riot Blockchain, Inc.*, 2023 WL 7133219, at \*6, \*10–11 (D.N.J. Aug. 25, 2023) (dismissing "[t]he Section 10(b) Claims" where plaintiff failed to state a claim under Rule 10b-5(a), (b), and (c)); *Rabin v. NASDAQ OMX PHLX LLC*, 712 F. App'x 188, 192–95 (3d Cir. 2017) (unpublished) (affirming dismissal under Rule 10b-5(a) and (c) by reviewing "Section 10(b) claim").

Nothing more was required to seek dismissal of the Rule 10b-5(a) and (c) grounds. Nevertheless, to cure Lead Plaintiffs' confusion, Defendants have amended their Table of Abbreviations.

## II.   THE AMENDED COMPLAINT FAILS TO STATE A SECTION 20(a) CLAIM.

Lead Plaintiffs fail to plead any of the elements of a Section 20(a) claim. (*See* Mot. at 37–40.) The deficiencies here are obvious and dictate dismissal of the Section 20(a) claim.

***Culpable Participation.*** While Lead Plaintiffs pay lip-service to culpable participation being an element (Opp. at 51), they make no effort to address *how* or *where* it is alleged in the Amended Complaint. That is not surprising. There are no allegations—let alone particularized, defendant-specific allegations[24]—regarding "knowing and substantial participation in the wrongdoing or inaction with the intent to further the fraud or prevent its discovery" by the E.A. Officer Defendants, Executive Defendants, or Mr. Quasha. *In re Advance Auto Parts, Inc., Sec. Litig.*, 2020 WL 599543, at \*10 (D. Del. Feb. 7, 2020); *Steamfitters Loc. 499 Pension Fund v. Alter*, 2011 WL 4528385, at \*11 (E.D. Pa. Sept. 30, 2011) ("[P]leading knowledge of the facts underlying the fraud, or even knowledge of the fraud itself" "[is] simply not enough.").

Instead—in an attempt to transform Section 20(a) into a pass-through for Section 10(b) liability—Lead Plaintiffs hang their hat on the conclusory assertion that the Executive and E.A. Officer Defendants "took part in the fraud" (Opp. at 52) because each allegedly made an E.A. Challenged Statement. That ignores, however, that the alleged fraud involved 79 Statements made by seven different speakers, so making only one or a few cannot by itself make a speaker a mastermind of the overall alleged fraud. Nor do they say anything about a speaker's actual involvement in the Isolated Billing and/or Operations Allegations or others' E.A. Challenged

---

[24] *In re Digit. Island Sec. Litig.*, 223 F. Supp. 2d 546, 561 (D. Del. 2002) (rejecting group pleading for Section 20(a) claim); *Winer Family Tr. v. Queen*, 503 F.3d 319, 336–37 (3d Cir. 2007) ("group pleading doctrine is no longer viable" in securities actions).

Statements. Lead Plaintiffs' citation to *Gorlamari v. Verrica Pharmaceuticals, Inc.*, is instructive: "[The] opposition to the motion to dismiss does not argue that [Defendants] were 'culpable participants' . . . . [The Court should] therefore grant the motion to dismiss." 2024 WL 150341, at *14 (E.D. Pa. Jan. 11, 2024); *see also, e.g.*, *In re Digit. Island*, 223 F. Supp. 2d at 562–63 ("broad[] and vague[]" allegations of participation insufficient).[25]

**Control.** The Opposition relies heavily on the Executive and E.A. Officer Defendants' alleged roles as "members of senior management." (Opp. at 52.) But the law is well-established that such vague allegations are simply inadequate. It is "actual control" over the content and issuance of *all* of the E.A. Challenged Statements that is key, not the one or few that each Executive or E.A. Officer Defendant made or Lead Plaintiffs' vague assertion that each oversaw the Company's "operations." *See LLDVF, L.P. v. Dinicola*, 2010 WL 3210613, at *12 (D.N.J. Aug. 12, 2010) (allegations "must be substantial" such as where defendants "tightly controlled [the] business and operations" or were "intimately involved in the drafting and publication of the offering materials" (quotations omitted)); *In re Advance Auto Parts*, 2020 WL 599543, at *9 (allegations of stock ownership and directorship insufficient). That showing is missing from the Amended Complaint and cannot be assumed solely from their titles. *See, e.g.*, *In re Merck & Co., Sec., Derivative & Erisa Litig.*, 2012 WL 3779309, at *11 (D.N.J. Aug. 29, 2012); *Universal Am. Corp. v. Partners Healthcare Sols. Holdings, L.P.*, 176 F. Supp. 3d 387, 399 (D. Del. 2016).

**Mr. Quasha.** Lead Plaintiffs assert for the *first time* that the ownership stake of Mr. Quasha's brother should be imputed to Mr. Quasha. (Opp. at 52.) The Amended Complaint says nothing about this issue. Even if credited, it is beside the point. Mr. Quasha's alleged ownership interest—*regardless of size*—is not enough by itself to establish actual control *or*

---

[25] Lead Plaintiffs do not even mention—let alone sufficiently plead—culpable participation as to Mr. Quasha.

culpable participation.  *LLDVF, L.P.*, 2010 WL 3210613, at *13–14; *In re Advance Auto Parts*, 2020 WL 599543, at *9–10.  And neither Lead Plaintiffs' so-called authority[26] nor their flagrant mischaracterization of Defendants' authority[27] supports a different conclusion.  What matters here is the glaring absence of any particularized allegations regarding Mr. Quasha in the Amended Complaint, which the Opposition mirrors by failing to point to a single E.A. Challenged Statement that he made or had any role in issuing.

    ***Primary Violation.***  As noted in Section I, Lead Plaintiffs have failed to adequately plead a Section 10(b) claim.  *See, e.g.*, *Williams v. Globus Med. Inc.*, 869 F.3d 235, 246 (3d Cir. 2017) (affirming dismissal of Section 20(a) claim "because" Section 10(b) claim dismissed).

## III.   THE AMENDED COMPLAINT FAILS TO STATE A SECTION 11 CLAIM.

### A.   <u>Tracing And Thus Standing Is Not Adequately Pled</u>.

    The Amended Complaint lacks the allegations necessary to plead Lead Plaintiffs' standing to assert the Section 11 claim.  (Mot. at 41–42.)  In hopes of avoiding dismissal, Lead Plaintiffs argue that standing is a "fact" issue that can be deferred to a later date, and that alleging they "purchased" "shares of AdaptHealth common stock in the SPO" from Jefferies[28]  (A.C. ¶¶ 371–72) is more than sufficient to satisfy their pleading burden.  Both arguments fail.

    As an initial matter, it is unclear what facts Lead Plaintiffs contend need to be resolved. The Motion did not take issue with the accuracy of the facts underlying Lead Plaintiffs' standing

---

[26]  *In re Franklin Bank Corp. Securities Litigation* did not analyze control liability and the language cited by Lead Plaintiffs pertains to Section 15, not Section 20(a).  *See* 782 F. Supp. 2d 364, 380, 393, 396–97, 400, 411, 414, 416, 419 (S.D. Tex. 2011).  *Harriman v. E. I. DuPont De Nemours & Co.* predates the PSLRA and *Twombly/Iqbal* and does not analyze "family relationships."  *See* 372 F. Supp. 101, 105 (D. Del. 1974).

[27]  Defendants' cases are not distinguished by Lead Plaintiffs (Opp. at 52 n.16).  Each required more than what Lead Plaintiffs have offered here.  *See In re Digital Island*, 223 F. Supp. 2d at 562–63 (directorship and "management responsibilities" insufficient); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 308 F. Supp. 2d 249, 273–74 (S.D.N.Y. 2004) (stock ownership and selection of board members insufficient); *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 85 (1st Cir. 2002) ("controlling shareholder" with "power to elect two-thirds of the directors" insufficient); *LLDVF, L.P.*, 2010 WL 3210613, at *13 (22% ownership and right to appoint directors insufficient).

[28]  Contrary to Lead Plaintiffs' assertion, the Amended Complaint does not allege the purchase price or purchase date.

allegation; rather, as is entirely appropriate at this stage (even for a Section 11 claim), the Motion challenged the allegation's sufficiency.[29]  *See, e.g.*, *De Vito*, 2018 WL 6891832, at *13, *17–18 (granting motion to dismiss where plaintiffs had "not adequately alleged traceability"); *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1109–10 (9th Cir. 2013) (affirming motion to dismiss Section 11 claim for lack of standing).  Lead Plaintiffs should be well aware of the circumstances surrounding their purchase, such as where the shares were held during their ownership, whether they received a stock certificate identifying the Secondary Offering, and any other information they believe shows, for pleading purposes, that what they purchased was in fact a share issued in connection with the Secondary Offering.  After all, "[i]f plaintiffs can never meet their burden of tracing their shares to the secondary offering [at the pleading stage], there is no reason to defer this question to a later stage." *In re Century Aluminum Co. Sec. Litig.*, 749 F. Supp. 2d 964, 978 (N.D. Cal. 2010).

In any event, it is black-letter law that a plaintiff cannot satisfy its pleading burden (not even under a notice standard) by simply restating legal requirements.  *See In re Ocugen*, 659 F. Supp. 3d at 587 ("[T]he complaint must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" (citation omitted)).  Yet that is all Lead Plaintiffs offer here (*i.e.*, shares were "purchased . . . in the SPO" (A.C. ¶¶ 371–72)), a paraphrase of the tracing requirement.  *See, e.g.*, *Slack Techs., LLC v. Pirani*, 598 U.S. 759, 770 (2023) ("[A] plaintiff [must] plead and prove that he purchased shares traceable to the [offering].").  It is thus no surprise that many courts have held similar allegations are inadequate.  *See De Vito*, 2018 WL 6891832, at *17–18 (rejecting "conclusory 'traceable to' allegations"); *In re Century Aluminum*,

---

[29]  Discovery would not change the outcome of Lead Plaintiffs' lack of standing, including because the relevant documents regarding the DTC's practices are already available to Lead Plaintiffs. (*See, e.g.*, Ex. 41.)  If this Court nevertheless determines that discovery is necessary on tracing, Defendants respectfully request the Court reserve judgment on the Motion until the parties conduct limited discovery and provide supplemental briefing.

729 F.3d at 1108 (rejecting allegations plaintiff "purchased . . . stock directly traceable to the Company's Secondary Offering"); *In re Ariad Pharms., Inc. Sec. Litig.*, 842 F.3d 744, 755–56 (1st Cir. 2016) (same).[30]

Moreover, the inadequacy of Lead Plaintiffs' allegations becomes even more glaring when viewed in the context of today's modern electronic trading system—common knowledge that this Court is not required to ignore.[31] Lead Plaintiffs' allegations depict a world in which tens of millions of shares of AdaptHealth Stock both existed and were trading prior to the Secondary Offering. (*See* A.C. at 1, ¶¶ 6, 363, 379, 397.) Such circumstances are far different than an IPO—where the only shares that could have been purchased are the shares connected to the first and only offering—and yet Lead Plaintiffs ask this Court to assume (solely on their say-so, not based on any facts) that the shares they purchased at a time when multiple issuances of shares were in circulation were connected to the particular offering necessary for them to assert their Section 11 claim. That is neither reasonable nor plausible, including because (i) there were nearly a hundred million shares in circulation when the Secondary Offering added another eight million, and (ii) *purchasing* shares is fundamentally different than identifying the *source* of those shares.

Although neither the Third Circuit nor the Supreme Court has addressed this specific issue to date,[32] a growing number of courts apply this common understanding in assessing a plaintiff's standing allegations. For example, in *In re Century Aluminum*, plaintiffs brought a Section 11 claim in connection with a secondary offering of 24.5 million shares (when nearly 50 million

---

[30] *See also Yates v. Municipal Mortg. & Equity, LLC*, 744 F. 3d 874, 898–901 (4th Cir. 2014) ("insufficient" allegation for 12(a)(2) claim that plaintiffs "purchased . . . common stock pursuant and/or traceable to the SPO Registration Statement" around date of offering); *In re FleetBoston Fin. Corp. Sec. Litig.*, 253 F.R.D. 315, 348 n.36 (D.N.J. 2008) (noting *Shapiro*'s lower pleading standard "archived" by Supreme Court).

[31] Defendants further contend that it is common sense and a judicially noticeable fact that the shares issued in connection with the Secondary Offering are held at the DTC in a "fungible bulk" commingled with prior-issued shares.

[32] Lead Plaintiffs have found a single case—*Vrakas v. U.S. Steel Corp.*, 2018 WL 4680314 (W.D. Pa. Sept. 29, 2018)—that states a contrary position. That case, however, is unreported and has never been cited for that proposition.

- 24 -

shares were already in the market), alleging that they "purchased Century Aluminum common stock directly traceable to the Company's Secondary Offering." 729 F.3d at 1106–07. The Ninth Circuit found this pleading inadequate—and held plaintiffs lacked standing—explaining that "[w]hen a company has issued shares in multiple offerings . . . a greater level of factual specificity will be needed before a court can reasonably infer that shares . . . are traceable to a particular offering." *Id.* at 1107. Similarly, in *De Vito*, the New Jersey District Court held that, because there were "two public offerings," plaintiffs' "boilerplate allegation . . . that they purchased stock 'pursuant to and/or traceable to the [2013] IPO'" was insufficient because it was just as "plausibl[e that] the shares could have derived from the second, 2014 offering." 2018 WL 6891832, at *15–17.[33] This Court should do the same here and dismiss the Section 11 claim for lack of standing.

### B.    A Material Misrepresentation Or Omission Is Not Adequately Pled.

The crux of a Section 11 claim—an untrue statement—is missing from the Amended Complaint. Although Lead Plaintiffs seek to hide that oversight by focusing on the applicable pleading standard,[34] that is irrelevant to the Section 11 claim's viability because none of the S.A. Challenged Statements constitutes a material misrepresentation or omission. (Mot. at 45–47.)

With respect to Lead Plaintiffs' failure to plead an actionable misrepresentation, Lead Plaintiffs have offered no independent arguments. (Opp. at 56–57.) They instead have taken the position that the adequacy of their falsity allegations rises and falls with the Court's assessment of

---

[33] *See also, e.g.*, *Jedrzejczyk v. Skillz Inc.*, 2022 WL 2441563, at *7 (N.D. Cal. July 5, 2022) ("Given the volume of other shares on the market from the prior offering, even alleging that someone bought shares on the day of the March 2021 Offering at the offering price is inadequate to establish statutory standing . . . due to a significant possibility that the shares purchased originated from the prior offering but were being traded at the secondary offering price."); *Hemmer Grp. v. Sw. Water Co.*, 663 F. App'x 496, 498 (9th Cir. 2016) (finding plaintiff "lacked standing to pursue its Section 11 claim" where its shares "were part of a fungible mass of [] shares . . . from multiple offerings").

[34] Lead Plaintiffs do not dispute that there is no substantive difference between the allegations and statements underlying the fraud-based Exchange Act Claims and the Securities Act Claims. Rather, Lead Plaintiffs contend that merely including a "disclaim[er] . . . of fraud" and using the word "negligence" (Opp. at 54) is enough to invoke Rule 8. That is wrong. *See Cal. Pub. Emps. Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 160–63 (3d Cir. 2004).

their Exchange Act falsity allegations (claims indisputably subject to the heightened pleading standard). As such, the S.A. Challenged Statements fail to constitute actionable misrepresentations for all of the reasons set forth above regarding the E.A. Challenged Statements. (*See supra* § I.C.)

With respect to Lead Plaintiffs' failure to plead an actionable omission, Lead Plaintiffs assert that statements can be misleading by omission (Opp. at 57)—a point that the Motion never disputed and, more importantly, says nothing about whether the alleged omissions at issue *here* actually rendered any of the S.A. Challenged Statements misleading. They, of course, did not. (Mot. at 45–47.) Lead Plaintiffs' other response—quoting the regulatory requirements and declaring them satisfied (Opp. at 59)—is just as futile. The mere fact that information about the Isolated Billing and/or Operations Allegations may not have been disclosed is by itself insufficient to plead an Item 303 or Item 105 violation.[35] More to the point, Lead Plaintiffs have not done the work—in the Amended Complaint or Opposition—to provide any factual basis for concluding a violation occurred here (*e.g.*, Allegations were a "trend," AdaptHealth determined Allegations would materially affect finances, or Allegations could have affected "business expectations").

## IV.    THE AMENDED COMPLAINT FAILS TO STATE A SECTION 15 CLAIM.

Lead Plaintiffs' defense of their Section 15 claim is as paltry as it is unconvincing. It is well-established[36] that culpable participation is a required element, *see Howard v. Arconic Inc.*, 2021 WL 2561895, at *29–30 (W.D. Pa. June 23, 2021) ("[Section 15] claim[s] require[] culpable participation as an element which needs to be pled and then proven."),[37] and it is not pled here at all (Mot. at 49–50). Bewilderingly, Lead Plaintiffs resort to complaining about unfairness (Opp.

---

[35] 17 C.F.R. §§ 229.303(a)(3)(ii), 229.105; *see also Jaroslawicz v. M&T Bank Corp.*, 962 F.3d 701, 711 (3d Cir. 2020) (Item 105 requires "concise and organized" "explanation" of "most significant risks").

[36] Lead Plaintiffs' cases agree. *In re Washington Mutual Inc.* acknowledged that district courts "require[] a pleading of culpable participation." 462 B.R. 137, 142–43 (D. Del. 2011). And *In re Measurement Specialties, Inc.* relies on *In re MobileMedia Securities Litigation*, which held the same. 28 F. Supp. 2d 901, 940–41 (D.N.J. 1998).

[37] *See also Duncan v. Vantage Corp.*, 2019 WL 1349497, at *5 (D. Del. Mar. 26, 2019) (same); *Sterling v. Iris Energy Ltd.*, 2024 WL 4318762, at *15 (D.N.J. Sept. 27, 2024) (same).

at 60), which, of course, is irrelevant on a motion to dismiss.  Lead Plaintiffs have not identified—because they cannot—a single allegation in the Amended Complaint that establishes culpable participation by any S.A. Officer or Director Defendant.  Where, for example, do they allege what each Defendant did to "substantial[y] participat[e] in the [alleged] wrongdoing" or conceal it "with the intent to further the fraud"?  *Carmack*, 258 F. Supp. 3d at 466.  That oversight requires dismissal of the Section 15 claim.  *See, e.g.*, *id.* at 469; *Howard*, 2021 WL 2561895, at *30.

Although no further inquiry is required, additional grounds for dismissal exist.  For example, there is no primary violation of the Securities Act.  (*See supra* § III; Mot. § II.A.)  There are also no adequate allegations of control, as the very allegations that Lead Plaintiffs declare are sufficient (Opp. at 59–60) have been rejected by many courts as conclusory and wholly inadequate.  *See, e.g.*, *Carmack*, 258 F. Supp. 3d at 469 (alleging "[officer] was 'able to, and did, control the contents of . . . public filings'" "insufficient"); *Duncan*, 2019 WL 1349497, at *5.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Amended Complaint in its entirety as to all Defendants with prejudice.

- 27 -

Dated: November 15, 2024

**WILLKIE FARR & GALLAGHER LLP**

By: */s/ Todd G. Cosenza*

Todd G. Cosenza (admitted *pro hac vice*)
Zeh S. Ekono (admitted *pro hac vice*)
Vincent P. Iannece (admitted *pro hac vice*)
Michaela A. Connolly (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York  10019
Telephone:  (212) 728–8000
tcosenza@willkie.com
zekono@willkie.com
viannece@willkie.com
mconnolly@willkie.com

**SAXTON & STUMP**
Steven D. Costello (No. 37288)
Kathryn Diane Maza Courtney (No. 330883)
100 Deerfield Lane, Suite 240
Malvern, Pennsylvania  19355
Telephone:  (484) 328–8500
sdc@saxtonstump.com
*kmc@saxtonstump.com*

*Counsel for Defendants AdaptHealth Corp., Luke McGee, Stephen P. Griggs, Joshua Parnes, Jason A. Clemens, Shaw Rietkerk, Wendy Russalesi, Rodney Carson, Alan Quasha, Frank J. Mullen, Richard Barasch, Terence Connors, Dr. Susan Weaver, Dale Wolf, Bradley Coppens, and David S. Williams III*

- 28 -

**ALLEN OVERY SHEARMAN STERLING US LLP**


By*: /s/ Adam S. Hakki*

Adam S. Hakki (admitted *pro hac vice*)
Daniel Lewis (admitted *pro hac vice*)
Elizabeth J. Stewart (admitted *pro hac vice*)
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848–4000
adam.hakki@aoshearman.com
daniel.lewis@aoshearman.com
elizabeth.stewart@aoshearman.com

**HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER**
Daniel Segal (No. 26218)
Andrew M. Erdlen (No. 320260)
One Logan Square, 27th Floor
Philadelphia, Pennsylvania 19103
Telephone: (215) 568–6200
dsegal@hangley.com
aerdlen@hangley.com

*Counsel for Defendants Deutsche Bank Securities Inc., Jefferies LLC, BofA Securities, Inc., Truist Securities, Inc., Robert W. Baird & Co. Incorporated, RBC Capital Markets, LLC, Stifel, Nicolaus & Company, Incorporated, UBS Securities LLC, Canaccord Genuity LLC and Leerink Partners LLC*

- 29 -

## CERTIFICATE OF SERVICE

I, Todd G. Cosenza, Esquire, hereby certify that on this date, a true and correct copy of the foregoing was served electronically via the Court's ECF system, where this document is available for downloading and viewing.

/s/ *Todd G. Cosenza*

Todd G. Cosenza

Dated: November 15, 2024